1

Ronda N. Baldwin-Kennedy, Esq.,  SBN: 302813
**Law Office of Ronda Baldwin-Kennedy**
5627 Kanan Rd, Suite 614
Agoura Hills, CA 91301-3358
Telephone: 951-268-8977 / Fax: 702-974-0147

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

9

Mrs. Olson's Coffee Hut, a proprietorship

10

DBA William Olson and Matt Olson and

11

Matt Olson , The Original Pizza Cookery

12

and Jordan Daniel Klemper.

13

      Plaintiffs,

14

         v.

15

COUNTY OF VENTURA and ROBERT

16

LEVIN, M.D., in his capacity as Health

17

Officer for Ventura County

18

19

      Defendants.

20

Case No.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.  Inverse Condemnation
2.  Substantive Due Process
3.  Procedural Due Process

U.S. Constitution, Amend. V, XIV
42 U.S.C. § 1983, § 1988
28 U.S.C. §1331(a)

21

22

The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. County of Ventura and its officers can't use private property for public use.

23

24

25

26

*Armstrong v. United States*, 364 U.S. 40, 49 (1960)

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................2

II.   JURISDICTION AND VENUE ...........................................3

III.   PARTIES ...........................................................................3

IV.   FACTS ...............................................................................3

    A.  The Shutdown Order .................................................3

    B.  Effect on Plaintiff's Business ...................................5

V.   CAUSES OF ACTION AND ARGUMENT .........................6

    FIRST CAUSE OF ACTION ...........................................6

    SECOND CAUSE OF ACTION .....................................11

    THIRD CAUSE OF ACTION ........................................13

VI.   ARGUMENT FOR THE REMEDY OF INJUNCTION ......15

    A.  Injunction Requested ...............................................15

    B.  Legal Standard for Injunction .................................15

    C.  Plaintiff Suffered Irreparable Injury .......................16

    D.  Plaintiff Has Inadequate Remedy At Law ..............17

    E.  Balance of Hardships Strongly Favors Plaintiff .....17

    F.  The Requested Injunction is in the Public Interest, Denying it is Against the Public Interest ...................17

VII.   PRAYER FOR RELIEF ...................................................18

1

# I.    INTRODUCTION

1.Plaintiffs Mrs. Olson's Coffee Hut, a proprietorship DBA William Olson and Matt Olsonand Matt Olson , The Original Pizza Cookery and Jordan Daniel Klemper comes to United States District Court and complains Defendants COUNTY OF VENTURA and ROBERT LEVIN, M.D., in his capacity as Health Officer for Ventura County who are using Governor Gavin Newsom's March 19, 2020 Emergency Order prohibiting Plaintiff from operating his business (the "Shutdown Order").

2.   Under authority of various sections of the California Government Code, the Shutdown Order was made to promote the public health in response to the Covid-19 pandemic. Plaintiff does not challenge the rationale for the Shutdown Order, nor the Governor's authority to issue it.

3.   Plaintiffs accepts that the Governor issued the Shutdown Order for a public purpose and for the public benefit of responding to a health crises. However, the Governor has placed the cost of these Orders squarely upon the shoulders of private individuals, including Plaintiffs, and has failed to justly compensate Plaintiffs for this taking, as a constitutionally permissible order would require.

4.   By prohibiting access to Tangible Property at a Physical Location, the Shutdown Order has made it "commercially impracticable" to use the business property belonging to Plaintiffs for any economically beneficial purpose.

5.   Under the doctrine of Inverse Condemnation, the Shutdown Order constitutes a regulatory taking of Plaintiffs business property without just compensation, and is thus violate of Plaintiffs  rights under the Takings Clause of the Fifth Amendment, made applicable to the States via the Fourteenth Amendment.

6.  Plaintiffs seeks just compensation for the business value lost as a direct and proximate result of the Shutdown Order. Plaintiffs also seeks a permanent Injunction, prohibiting any further enforcement of the Shutdown Order unless and until it is brought into compliance with the law, as discussed below.

## II.    JURISDICTION AND VENUE

7.  Original federal subject matter jurisdiction to adjudicate this Inverse Condemnation suit is found under 28 U.S.C. §1331(a), which confers jurisdiction to hear cases alleging the violation of rights under the the U.S. Constitution. Plaintiffs seeks relief under 28 U.S.C. § 2201-2202, the Declaratory Judgment Act; 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the Civil Rights Act, under the U.S. Constitution, Amend. V, and U.S. Constitution Amend. XIV, and see also Fed. Rule of Civ. Pro. Rule 23.

8.  Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

## III.    PARTIES

9.  Plaintiff Mrs. Olson's Coffee Hut a a proprietorship DBA William Olson and Matt Olson and Matt Olson is a coffee shop and plaintiff  The Original Pizza Cookery and Jordan Daniel Klemper is a pizzeria ( a pizza shop).

10. Defendants, COUNTY OF VENTURA and ROBERT LEVIN, M.D., in his capacity as Health Officer for Ventura County named in his official capacity, who is responsible for maintain health conditions in public places.

## IV.FACTS

11. On March 4, 2020, a state of emergency was declared in California related to the spread of the novel coronavirus ("Covid-19").

12. On March 19, 2020, acting under the authority vested in him by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665; Defendant Governor Gavin Newsom issued Executive

3

## A. The Shutdown Order

Order N-33-20 (the "Shutdown Order"), a true and correct copy of which is attached hereto as Exhibit A.

13. The Shutdown Order states that:

> To protect public health, I [Gavin Newsom] as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19.

14. By incorporated reference, the Shutdown Order identifies and exempts the following sixteen economic sectors: Chemical Sector, Commercial Facilities Sector, Communications Sector, Critical Manufacturing Sector, Dams Sector, Defense Industrial Base Sector, Emergency Services Sector, Energy Sector, Financial Services Sector, Food and Agriculture Sector, Government Facilities Sector, Healthcare and Public Health Sector, Information Technology Sector, Nuclear Reactors, Materials, and Waste Sector, Transportation Systems Sector, Water and Wastewater Systems Sector.

15. Any person continuing to operate a non-exempt business in the face of the Shutdown Order is:

> …guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both such fine and imprisonment.

Cal. Gov. Code. § 8665

16. Conspicuous by its absence within the Shutdown Order is any provision regarding compensation for the economic hardship to non-exempt businesses as a direct and proximate result of the Shutdown Order, which order will "stay in effect until further notice".

4

### B.   Effect on Plaintiff's Business

17. Plaintiff Mrs. Olson's Coffee Hut a proprietorship DBA William Olson and Matt Olson and Matt Olson is a coffee shop and plaintiff The Original Pizza Cookery and Jordan Daniel Klemper is a pizzeria; both business are conducted in Ventura County.

18. The Businesses depend upon the use of Tangible Property, including all the kitchen equipments, a cash register, and a computer system.

19. During 2019, Plaintiffs' Businesses  averaged a large amount of income per month in revenue.

20.  The Shutdown Order was an order that Plaintiffs was immediately disallowed from operating his business.

21. On May 26th and July 28th 2020, under threat of fines and imprisonment, Plaintiff was forced to cease operating the Business. Plaintiffs was forced to contact his employees and inform each of them not to come to work, because they had all been laid off indefinitely.

22. To date, Plaintiffs has incurred more than a quarter of a million dollars in lost profits.

23. After the Shutdown Order, Plaintiffs' Businesses depreciated value of equipment and the business itself.

24. The Shutdown Order prevents Plaintiffs from using his Physical Location and his Tangible Property in any economically beneficial manner. The Shutdown Order requires that Plaintiffs and his Tangible Property sit idle in the Physical Location he is prohibited from accessing.

25. Since the Shutdown Order, Plaintiffs have inquired of a listing agent what the Businesses could be sold for at present. Plaintiffs are informed that, because of the economic uncertainty bought about by the Shutdown Order, the Business as such cannot be sold at all, or could only be sold at a tremendous discount, as compared to its former value.

5

26. Plaintiffs could presumably liquidate the Tangible Assets, but only at a tremendous discount (if at all), because innumerable other businesses similar to Plaintiffs' are similarly-situated, and are also attempting to liquidate.

27. The value of Plaintiffs Businesses is now substantially diminished, if not reduced to zero.

28. At no time did the Ventura County or the Governor, nor any official offer to compensate Plaintiffs in exchange for the total regulatory seizure of his property.

## V.    CAUSES OF ACTION AND ARGUMENT
### FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 – Inverse Condemnation - Violation of the Takings Clause U.S. Constitution Fifth Amendment, Fourteenth Amendment**

29. PlaintiffS repeat, reallege and incorporates by reference all facts stated above.

30. Make applicable to the States via the Fourteenth Amendment, the Fifth Amendment to the United States Constitution states, in relevant part:

> No person shall be … deprived of property without due process of law; nor shall private property be taken for public use, without just compensation.

> U.S. Constitution, Amend. V.

31. The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The Governor issued the Shutdown Order as a means of slowing the spread of Covid-19.

32. The Ventura County and its officers thus acted under color of state law in enforcing the Shutdown Order only to public places, which was issued to serve a well-recognized public purpose by a duly elected state official.

6

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

33. The Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987) ("*First English*") (emphasis in original))

34. While a typical taking occurs when the government condemns property under its power of eminent domain, the doctrine of "inverse condemnation" is based on the proposition that a taking may occur without the initiation of formal proceedings. *First English, supra*, at 315. The Supreme Court has observed that the "self-executing character of the constitutional provision with respect to compensation" entitles a landowner to bring an action in inverse condemnation when government action works a taking of property rights. *Id.*

35. The landmark Supreme Court case *Penn Central Transportation Company v. New York City*, 438 U.S. 104, 107, 98 S. Ct. 2646, 2650 (1978) ("*Penn Central*") established the factors the Court will consider in determining whether a regulatory taking has occurred. As the *Penn Central* Court explained:

> Factors of particular significance in determining whether a particular restriction on the use of property will be rendered invalid under the Fifth Amendment by government's failure to pay for any losses proximately caused by it are the economic impact of the regulation on the claimant--particularly, the extent to which the regulation has **interfered with distinct investment backed expectations**--and the character of the governmental action.
>
> *Penn Central, supra,* at, 107, bolding added.

7

36. The Supreme Court has repeatedly held that a regulatory taking occurs when a government action has "very nearly the same effect for constitutional purposes as appropriating or destroying [the property as a whole]." *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 414–15 (1922); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 484–85 (1987) (explaining that regulatory taking occurs when the government action "makes it impossible for petitioners to profitably engage in their business, or that there has been undue interference with their investment-backed expectations").

37. The Shutdown Order adversely impacted Plaintiffs Business and his use of his Tangible Property and Physical Location to such an extent that, at least temporarily, the Orders entirely diminished the economically beneficial use of the Tangible Property.

38. Plaintiffs Businesses are now essentially worthless. Plaintiffs had distinct investment-backed expectations – that the Business would become profitable, and would remain profitable, as it had been for many years prior to the Shutdown Order.

39. During the indefinite period of shutdown, the Shutdown Order prohibited all economically beneficial and profitable uses of Plaintiff's Tangible Property and Physical Location and that; save bare ownership, the entire bundle of property rights was extinguished.

40. Plaintiffs was not permitted to use his Tangible Property or Physical Locations in any fashion to run his business; instead, the Shutdown Order required his Physical Location housing his non-exempt business to remain idle.

41. As a practical matter, the Shutdown Order prevented the affected Physical Locations from being leased, subleased, bought, sold or used for other purposes. The Shutdown Order also effectively prevented the hiring of workers to use the Tangible Property belonging to Plaintiffs or to assemble and ship goods built from their inventories.

8

42. Thus, the Shutdown Order interfered with Plaintiffs ordinary investment expectations as a property holder.

43. Plaintiffs has suffered a complete loss of "all economically beneficial uses" of his Property while the Shutdown Order remains in effect. This complete loss constitutes a categorical taking, whether it be Plaintiff's inability to operate his business at his Physical Location or his inability to exercise any of his other property rights with regard to his Tangible Property. See *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 2895 (1992) ("*Lucas*").

44. Plaintiffs "have been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle". *Lucas, supra,* at 1019. Thus under *Lucas,* "he has suffered a taking". *Id.*

45. Defendant acted in an arbitrary and capricious manner in determining which businesses to close and by failing to create any oversight or appeals process in which those decisions could be challenged.

46. Thus, given the severely adverse effect on Plaintiffs' investment-backed economic expectations, the *Penn Central* balancing test strongly mitigates in favor of Plaintiffs.

47. Since the Shutdown Order is temporary, it might be argued that this case is like *United States v. Cent. Eureka Mining Co*., 357 U.S. 155, 78 S. Ct. 1097 (1958) ("*Eureka Mining*"), in which a Federal wartime order required non-essential gold mines to close. The Supreme Court held that this was not an unconstitutional taking, because the Government did not occupy, use, or possess mines; rather it sought only to free up essential equipment and manpower for critical wartime uses. Such a temporary restriction during wartime is not a taking. See *Eureka Mining, supra,* at 1103.

9

48. The distinction between the present case and *Eureka Mining* is clear. First, we are not at war, we are confronting a disease. Second, even if the public effort against Covid-19 is analogous to war, the Shutdown Order did not free up essential equipment or manpower for critical "wartime" uses. Indeed, quite the opposite has occurred, as the Shutdown Order explicitly defined Plaintiff's Business as *non-critical.*

49. The Shutdown Order is utterly unprecedented. Never in the modern history of the United States – even in wartime – has such a large portion of the economy been idled for so long by a government order.

50. The Supreme Court "recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster—and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 531, 125 S. Ct. 2074, 2077 (2005)

51. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415–16 (1922).

52. Here, the Shutdown Order goes too far. It constitutes a regulatory taking implemented for a recognized public purpose, and therefore the failure to pay just compensation contravenes the Takings Clause of the Fifth and Fourteenth Amendments. See *Penn Central*, *supra*; *Lucas*, *supra,* and see also the more recent *Horne v. Dep't of Agric.*, 576 U.S. 350, 135 S. Ct. 2419, 2426 (2015) ("*Horne*"):

> Nothing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different when it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.
>
> *Horne, supra*, at 2426.

10

53. In light of the foregoing, the Court must find that the Shutdown Order constitutes a regulatory taking. Plaintiff must be awarded just compensation for the lost value of the Business.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Substantive Due Process
### U.S. Constitution - Fourteenth Amendment

54. Plaintiffs repeats, realleges and incorporates by reference all facts stated above.

55. Never in the modern history of the United States – even in wartime – has such a large swath of the economy been idled for so long by a government order. Plaintiffs has a protected liberty interest in his right to live without arbitrary governmental interference, and a protected fundamental property right to use and enjoy land in which he holds a recognized interest (such as fee simple, or as a leasehold). See *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440–41 (E.D. Pa. 2011) ("MFS"), citing *DeBlasio v. Zoning Bd. Of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600 (3d Cir.1995); see also *Horne*, *supra*, at 2426.

56. The Supreme Court "ha[s] emphasized time and again that "[t]he touchstone of due process is protection of the individual against arbitrary action of government[.]" *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998), (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

57. "[T]he fault [may] lie[] in a denial of fundamental procedural fairness … or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" Id. at 845-846 (citations omitted ""[S]ubstantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' ... or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952), and *Palko v. Connecticut*, 302 U.S. 319, 325–326 (1937)).

11

58. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 847 (quotations omitted).

59. The Shutdown Order enacted by the Governor, as set forth above, constitutes arbitrary, capricious, irrational and abusive conduct which unlawfully interferes with Plaintiffs liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

60. Defendant has acted under color of state law with the intent to unlawfully deprive Plaintiffs of his liberty and property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution. Defendant's actions, including issuance and enforcement of the Shutdown Order, constitute the official policy, custom, and practices of the State of California. The Shutdown Order "impinged upon [John Q. Business Owner's] use and enjoyment of [his] property [in Anytown CA]" and separately impinges upon the use of his Tangible Property. See *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592 (3d Cir. 1995) ("*DeBlasio*") at 601.

61. Therefore, The Governor has violated substantive due process rights. See also *Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405, 415 (1935) (concluding that state's police power was "subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably," and that such was requiring a railroad to bear the expense associated with construction of a public road and moving train tracks accordingly).

62. Here, the Governor has arbitrarily, irrationally and capriciously "impinge[d] upon [Plaintiff's use and enjoyment of his property [in Anytown CA]" by, inter alia, requiring Plaintiff to shutdown indefinitely and to privately bear the burden for such publicly beneficial decisions, which are aimed at slowing the spread of the novel coronavirus. See *DeBlasio*, *supra* at 601.

12

63. The Governor implemented the Shutdown Order for the purpose of preserving public health. The implementation of the Shutdown Order, however, caused Plaintiffs substantial economic harm which he is being asked to privately bear for a manifest public benefit.

64. In taking property for public use while failing to compensate Plaintiffs, the Governor's behavior "'shocks the conscience' and violates the 'decencies of civilized conduct.'" See *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 118 S. Ct. 1708 (1998) (*LewisI''*) at 846–47 (citations omitted). "[I]t d[oes] not comport with traditional ideas of fair play and decency" and therefore violates substantive due process. *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957). Defendants' intentional, willful and wanton conduct 'shocks the conscience' of all citizens, who fear unchecked government intrusion for arbitrary and capricious ends – even if such ends are not ill-intentioned.

65. In depriving Plaintiffs of their liberty and property interests without due process of law, Defendants acted intentionally, willfully, wantonly, and with callous and reckless disregard for Plaintiffs' constitutional rights. As a direct and proximate result of the Shutdown Order, Plaintiffs have and will continue to sustain monetary damages including loss in the value of the Tangible Property and Physical Locations, lost revenues, profits, expenses, attorneys' fees, and other costs incurred.

66. Therefore, Defendants are liable to Plaintiffs for the deprivation of his Fourteenth Amendment right to substantive due process.

### THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – Procedural Due Process
### U.S. Constitution - Fourteenth Amendment

67. Plaintiffs repeats, realleges and incorporates by reference all facts stated above.

68. Plaintiff has a protected fundamental property right to use and enjoy land in which they hold a recognized interest (such as fee simple, or as a leasehold).

13

69. See *MFS*, 771 F. Supp. 2d at 440–41 (citing *DeBlasio*, 53 F.3d at 600); see also *Horne*, 576 U.S. 350, 135 S. Ct. at 2426.

70. Under the Fourteenth Amendment, government actors must provide adequate due process procedures before or after divesting citizens of fundamental rights, which includes the property rights linked to the Physical Locations of Plaintiffs. *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 432-33 (1982); *Vitek v. Jones*, 445 U.S. 480, 495-96 (1980); *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 421 (3rd Cir.2000).

71. A claim involving procedural due process is evaluated by weighing "the private interest affected by the governmental action and the value of additional procedural safeguards" against "the fiscal and administrative burdens that additional procedures would impose on the government." *Rogin v. Bensalem Township*, 616 F.2d 680, 694 (3rd Cir. 1980). In conducting this procedural due process evaluation, this court should consider whether the following have been provided Plaintiffs: (1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses and respond to evidence; (6) the right to representation by counsel; and (7) a decision based on the record complete with reasoning for the result. *Id.*

72. The exigent nature of the circumstances surrounding the COVID-19 pandemic likely justify the need for quick action; however, the current exigencies do not allow the Governor to permanently disregard the guaranteed safeguards of Due Process.

73. The Shutdown Order does not provide any procedural Due Process protections for Plaintiffs, who has been forced to standby as he has been divested of his Tangible Property and Physical Locations.

74. The Governor has not created a meaningful mechanism to challenge his determinations as to whether a particular business ought to be permitted to operate their Physical Location – not prior to the deprivation, nor after (or during) the deprivation.

14

75. Plaintiffs lack any procedure by which he could appeal the exclusion of his particular Business from the list of those allowed to continue operating. Nor does Plaintiffs have any apparent recourse against the economic injury suffered as a result of the Shutdown Order. The taking of his Physical Location and Tangible Property remains in effect until the Governor lifts the Shutdown Order, and no other accountability exists, so far as Plaintiff is aware.

76. This complete lack of procedural safeguards – at any point – as it relates to the Property targeted by the Shutdown Order deprives Plaintiffs of their fundamental property rights, without due process of law, based solely on the unappeasable determination of the Ventura County.

77. Therefore, Defendants is liable to Plaintiffs for the deprivation of his Fourteenth Amendment right to procedural due process.

## VI.   ARGUMENT FOR THE REMEDY OF INJUNCTION

### A.   Injunction Requested

Plaintiffs seek a Permanent Injunction prohibiting Defendant and future Governors from issuing any Emergency Order that deprives a business owner of the right to operate the business, unless the order is necessary to free up essential equipment and manpower for critical uses, or is accompanied by a directive to justly compensate the business owner for fair market value lost as a direct and proximate result of the order.

### B.   Legal Standard for Injunction

The *sine qua non* of injunctive relief is a showing of irreparable injury and the inadequacy of legal remedies. See *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Generally, the party requesting injunctive relief must establish the likelihood of irreparable harm if the injunction is not entered and that other remedies at law are inadequate.

15

There is a balancing test that courts typically employ in determining whether to issue an injunction. To seek a permanent injunction, the plaintiffs must pass the four-step test: (1) that the plaintiffs has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that the remedy in equity is warranted upon consideration of the balance of hardships between the plaintiffs and defendant; and (4) that the permanent injunction being sought would not hurt public interest. See, e.g., *Weinberger v. Romero—Barcelo*, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

### C.    Plaintiff Suffered Irreparable Injury

Here, Plaintiffs has suffered irreparable injury under the Fifth Amendment. Plaintiffs did nothing wrong, yet is faced with a taking comprising the total loss of the Business, valued at $250,000. Moreover, Plaintiffs suffered an injury to liberty, as the Shutdown Order deprived Plaintiffs of the right operate *any* business not deemed "essential".

Deprivation of fundamental liberty interests, no matter how brief, are considered to irreparable. In fact, "when an alleged deprivation of a constitutional right is involved, most courts hold that ***no further showing of irreparable injury is necessary***." See, e.g., *Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566 (6th Cir. 2002)* at 578 (a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of plaintiff's constitutional rights); *ACLU of KY v. McCreary County, Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003) (if it is found that a constitutional right is being threatened or impaired, a finding of irreparable injury is mandated); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm) (citations omitted); *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876 (3rd Cir. 1997) (denial of preliminary injunctive relief was irreparable harm to plaintiffs' voting and associational rights);

16

---

1    *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992) (holding that plaintiffs may

2    establish irreparable harm based on an alleged violation of their Fourth Amendment

3    rights*); McDonell v. Hunter*, 746 F.2d 785, 787 (8th Cir. 1984) (finding that a violation

4    of privacy constitutes an irreparable harm); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d

5    Cir. 1984) (holding allegation of violation of Eighth Amendment rights sufficient

6    showing of irreparable harm); *Doe v. Mundy*, 514 F.2d 1179 (7th Cir 1975) (denial of

7    constitutional privacy right was irreparable harm); *Beerheide v. Zavaras*, 997 F.Supp.

8    1405 (D.C. Colo. 1998) (irreparable harm satisfied by allegation of deprivation of free

9    exercise of religion).

10    **D.    Plaintiff Has Inadequate Remedy At Law**

11    To the best of Plaintiff's knowledge, no statutory remedy exists for this injury. While

12    Plaintiffs seeks just compensation, the requested Injunction is also necessary, for two

13    independent reasons. First, as discussed above, the constitutional injury is irreparable

14    and not adequately addressed by money damages. Second, an injunction prohibiting

15    further enforcement of an unconstitutional law will prevent further injury to Plaintiffs,

16    and will prevent future injuries to others. See "Public Interest", *infra.*

17    **E.    Balance of Hardships Strongly Favors Plaintiff**

18    The balance of hardships strongly favors issuing the injunction. Plaintiffs does not deny

19    that promoting the public health is a legitimate interest of Defendant. But Defendant has

20    not attempted, let alone succeeded in showing that the spread of Covid-19 was affected

21    by the Shutdown Order. South Korea effectively promoted the public health without

22    any such Shutdown Order. *Supra.* Thus, Defendant suffers no hardship from the

23    issuance of the requested Injunction.

24    On the other hand, Plaintiffs has suffered extreme hardship – the loss of profits and

25    inability to operate a legitimate business - and will continue to suffer catastrophic losses

26    unless and until the requested Injunction is issued.

27    **F.    The Requested Injunction is in the Public Interest, Denying it is**

28    **Against the Public Interest**

17

The requested Injunction promotes the public interest of a well-functioning economy, while not harming the interest of public health. While public health is undeniably in the public interest, no connection has been shown between the Shutdown Order and any slowing of the spread of Covid-19. In fact, the example of South Korea shows the opposite. *Supra.* Moreover, the functioning of the retail sector of the economy is very much in the public interest, the designation of such businesses as "non-essential" notwithstanding.

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief as follows:

Declaratory Judgment that the issuance and enforcement of the Shutdown Order was an unconstitutional regulatory taking without just compensation under the Fifth Amendment, as applicable to the States via the Fourteenth Amendment;

Just compensatory damages in an amount equal to the value of the Business prior to the Shutdown Order, less any amount recoverable by liquidating the remaining assets of the Business, estimated to be $250,000 for each business, such amounts to be proven at trial;

Punitive Damages;

Permanent Injunction prohibiting Defendant and future Governors from issuing any Emergency Order that deprives an otherwise law-abiding business owner of the right to operate the business in an economically productive manner by utilizing any Tangible Property at any Physical Location legally controlled by the business owner, unless at least one of the two following conditions are met: (1) the Emergency Order contains a directive to justly compensate the business owner for fair market value lost as a direct and proximate result of said Emergency Order; or (2) the Emergency Order is necessary to free up essential equipment and manpower for critical uses, and only after an appellate review of any classification determining which businesses, which equipment, and which manpower are and are not deemed critical;

18

1    Costs of the suit and attorney fees as allowed by statute; and Any

2    other such relief as the Court may deem proper.

3

4

5                            Respectfully submitted on January 13, 2021

6

7                                    */S/ Ronda Baldwin Kennedy*

8                                    Ronda Baldwin Kennedy
                                     *Attorney for Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          19

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT