1  Ronda N. Baldwin-Kennedy, Esq., SBN: 302813
   **Law Office of Ronda Baldwin-Kennedy**
2  5627 Kanan Rd, Suite 614
   Agoura Hills, CA 91301-3358
3  Telephone: 951-268-8977 / Fax: 702-974-0147

4

5

6                **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
7                 **LOS ANGELES DIVISION**

8

9   MRS. OLSON'S COFFEE HUT, a              Case No.

10  proprietorship DBA WILLIAM OLSON

11  and MATT OLSON and MATT OLSON,          **PLAINTIFFS' APPLICATION FOR**
                                            **TEMPORARY RESTRAINING**
12  THE ORIGINAL PIZZA COOKERY              **ORDER, AND ISSUANCE OF**
                                            **ORDER TO SHOW CAUSE RE:**
13  AND JORDAN DANIEL KLEMPER.              **PRELIMINARY INJUNCTION.**

14       Plaintiff,

15            v.

16  COUNTY OF VENTURA and ROBERT

17  LEVIN, M.D., in his capacity as Health

18  Officer for Ventura County

19       Defendants.

20

21

22       The Fifth Amendment's guarantee that private property shall not be taken
         for a public use without just compensation was designed to bar
23       Government from forcing some people alone to bear public burdens
         which, in all fairness and justice, should be borne by the public as a
24       whole. County of Ventura and its officers can't use private property for
         public use.
25

26       *Armstrong v. United States*, 364 U.S. 40, 49 (1960)

27

28

PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND ISSUANCE OF ORDER TO
SHOW CAUSE RE: PRELIMINARY INJUNCTION.

1
2
## TABLE OF CONTENTS
3

I.   INTRODUCTION..............................................................................................3

II.   JURISDICTION AND VENUE......................................................................4

III.  PARTIES .........................................................................................................4

IV.  FACTS .............................................................................................................4

    A.  The Shutdown Order................................................................................4

    B.  Effect on Plaintiff's Business .................................................................5

VI.  ARGUMENT FOR THE REMEDY OF INJUNCTION ...........................4

    A.  Injunction Requested ...........................................................................4,5

    B.  Legal Standard for Injunction.................................................................5

    C.  Plaintiff Suffered Irreparable Injury ......................................................6

    D.  Plaintiff Has Inadequate Remedy At Law ...........................................6,7

    E.  Balance of Hardships Strongly Favors Plaintiff ..................................7,8

    F.  The Requested Injunction is in the Public Interest, Denying it is Against the Public Interest .................................................................................................... 8

VII. STATUTES

8 U.S.C. §1331(a)…………………………………………………………..4

28 U.S.C. § 2201-2202 ……………………………………………………4

Declaratory Judgment Act; 42 U.S.C. § 1983 and 42 U.S.C. § 1988……………...4

U.S. Constitution Amend. XIV……………………………………………… 4

Fed. Rule of Civ. Pro. Rule 23……………………………………………..4

 Venue is proper under 28 U.S.C. § 1391(b)………………………………………4

Cal. Gov. Code. § 8665…………………………………………………5

VIII. TABLE OF AUTHORITIES

*Sampson v. Murray, 415 U.S. 61, 88 (1974)………………………………………….7*

1

---

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

1

2      *Weinberger v. Romero—Barcelo, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72*

3   *L.Ed.2d 91 (1982);* …………………………………………………………….......................7

4      *Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542*

5   *(1987)*……………………………………………………………………........................ 7

6      *Overstreet v. Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566 (6th Cir. 2002)*……….8

7      *ACLU of KY v. McCreary County, Kentucky, 354 F.3d 438, 445 (6th Cir. 2003)*………..8

8      *Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998)*……………………8

9      *Council of Alternative Political Parties v. Hooks, 121 F.3d 876 (3rd Cir. 1997)*………..8

10     *Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992)*……………………………………….8

11     *McDonell v. Hunter, 746 F.2d 785, 787 (8th Cir. 1984)* …………………………………..8

12     *Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984)*…………………………………….8

13     *Doe v. Mundy, 514 F.2d 1179 (7th Cir 1975)*…………………………………………….8

14     *Beerheide v. Zavaras, 997 F.Supp. 1405 (D.C. Colo. 1998)*……………………………….8

15     VII.     PRAYER FOR RELIEF…………………………………………….10

16

17

18

19

20

21

22

23

24

25

26

27

28                                                  2

| | |
|---|---|
| 1 | **I.       INTRODUCTION** |
| 2 | 1.   Plaintiffs Mrs. Olson's Coffee Hut and The Original Pizza Cookery come to United |
| 3 | States District Court and complains about Defendants COUNTY OF VENTURA and ROBERT |
| 4 | LEVIN, M.D., in his capacity as Health Officer for Ventura County who are using Governor |
| 5 | Gavin Newsom's March 19, 2020 Emergency Order prohibiting Plaintiff from operating his |
| 6 | business (the "Shutdown Order"), attached hereto as EXHIBIT "A". |
| 7 | 2.   Under authority of various sections of the California Government Code, the Shutdown |
| 8 | Order was made to promote the public health in response to the Covid-19 pandemic. Plaintiff |
| 9 | does not challenge the rationale for the Shutdown Order, nor the Governor's authority to issue |
| 10 | it. |
| 11 | 3.   Plaintiffs accepts that the Governor issued the Shutdown Order for a public purpose and |
| 12 | for the public benefit of responding to a health crises. However, the Governor has placed the |
| 13 | cost of these Orders squarely upon the shoulders of private individuals, including Plaintiffs, |
| 14 | and has failed to justly compensate Plaintiffs for this taking, as a constitutionally permissible |
| 15 | order would require. |
| 16 | 4.   By prohibiting access to Tangible Property at a Physical Location, the Shutdown Order |
| 17 | has made it "commercially impracticable" to use the business property belonging to Plaintiffs |
| 18 | for any economically beneficial purpose. |
| 19 | 5.   Under the doctrine of Inverse Condemnation, the Shutdown Order constitutes a |
| 20 | regulatory taking of Plaintiffs business property without just compensation, and is thus violate |
| 21 | of Plaintiffs rights under the Takings Clause of the Fifth Amendment, made applicable to the |
| 22 | States via the Fourteenth Amendment. |
| 23 | 6.   Plaintiffs seeks just compensation for the business value lost as a direct and proximate |
| 24 | result of the Shutdown Order. Plaintiffs also seeks a permanent Injunction, prohibiting any |
| 25 | further enforcement of the Shutdown Order unless and until it is brought into compliance with |
| 26 | the law, as discussed below. |
| 27 | |
| 28 | 3 |

1

## II.     JURISDICTION AND VENUE

2      7.   Original federal subject matter jurisdiction to adjudicate this Inverse Condemnation suit

3    is found under 28 U.S.C. §1331(a), which confers jurisdiction to hear cases alleging the

4    violation of rights under the the U.S. Constitution. Plaintiffs seek relief under 28 U.S.C. §

5    2201-2202, the Declaratory Judgment Act; 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the Civil

6    Rights Act, under the U.S. Constitution, Amend. V, and U.S. Constitution Amend. XIV, and

7    see also Fed. Rule of Civ. Pro. Rule 23.

8      8.   Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events

9    giving rise to Plaintiffs claim occurred in this district.

10

## III.     PARTIES

11      9.   Plaintiffs  MRS. OLSON'S COFFEE HUT, a proprietorship DBA WILLIAM OLSON and
    MATT OLSON and MATT OLSON, a coffee shop.

12    THE ORIGINAL PIZZA COOKERY, a pizzeria AND JORDAN DANIEL KLEMPER an owner.

13      10. Defendants, COUNTY OF VENTURA and ROBERT LEVIN, M.D., in his capacity as

14    Health Officer for Ventura County named in his official capacity, who is responsible for

15    maintain health conditions in public places.  .

16

## IV.     FACTS

17    **A.     The Shutdown Order**

18      11. On March 4, 2020, a state of emergency was declared in California related to the spread

19    of the novel coronavirus ("Covid-19").

20      12. On March 19, 2020, acting under the authority vested in him by the State Constitution

21    and statutes of the State of California, and in particular, Government Code sections 8567, 8627,

22    and 8665; Defendant Governor Gavin Newsom issued Executive Order N-33-20 (the

23    "Shutdown Order"), a true and correct copy of which is attached hereto as EXHIBIT A.

24      13. The Shutdown Order states that:

25

26

27

28                                                    4

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

> To protect public health, I [Gavin Newsom] as State Public Health Officer
> and Director of the California Department of Public Health order all
> individuals living in the State of California to stay home or at their place of
> residence except as needed to maintain continuity of operations of the federal
> critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-
> critical-infrastructure-during-covid-19.

14. By incorporated reference, the Shutdown Order identifies and exempts the following sixteen economic sectors: Chemical Sector, Commercial Facilities Sector, Communications Sector, Critical Manufacturing Sector, Dams Sector, Defense Industrial Base Sector, Emergency Services Sector, Energy Sector, Financial Services Sector, Food and Agriculture Sector, Government Facilities Sector, Healthcare and Public Health Sector, Information Technology Sector, Nuclear Reactors, Materials, and Waste Sector, Transportation Systems Sector, Water and Wastewater Systems Sector.

15. Any person continuing to operate a non-exempt business in the face of the Shutdown Order is:

> …guilty of a misdemeanor and, upon conviction thereof, shall be punishable
> by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment
> for not to exceed six months or by both such fine and imprisonment.
>
> Cal. Gov. Code. § 8665

16. Conspicuous by its absence within the Shutdown Order is any provision regarding compensation for the economic hardship to non-exempt businesses as a direct and proximate result of the Shutdown Order, which order will "stay in effect until further notice".  EXHIBIT "A".

## B.   Effect on Plaintiff's Business

17. Plaintiffs Mrs. Olson's Coffee Hut and The Original Pizza Cookery are business that operate in Ventura County.

18. The Business depends upon the use of Tangible Property, including Kitchen equipment, a cash register, and a computer system.

19. During 2019, Plaintiff's Business averaged a large amount of income per month in revenue.

5

20.  The Shutdown Order was an order that Plaintiffs were immediately disallowed from operating his business.

21. On May 26th and July 28th 2020, under threat of fines and imprisonment, Plaintiffs were forced to cease operating the Business. Plaintiffs was forced to contact his employees and inform each of them not to come to work, because they had all been laid off indefinitely.

22. To date, Plaintiffs has incurred more than a quarter of a million dollars in lost profits.

23. After the Shutdown Order, Plaintiffs Businesses depreciated value of equipment and the business itself.

24. The Shutdown Order prevents Plaintiffs from using his Physical Location and his Tangible Property in any economically beneficial manner. The Shutdown Order requires that Plaintiffs and his Tangible Property sit idle in the Physical Location he is prohibited from accessing.

25. Since the Shutdown Order, Plaintiffs has inquired of a listing agent what the Business could be sold for at present. Plaintiffs is informed that, because of the economic uncertainty bought about by the Shutdown Order, the Business as such cannot be sold at all, or could only be sold at a tremendous discount, as compared to its former value.

26. Plaintiffs could presumably liquidate the Tangible Assets, but only at a tremendous discount (if at all), because innumerable other businesses similar to Plaintiffs are similarly-situated, and are also attempting to liquidate.

27. The value of Plaintiffs Business is now substantially diminished, if not reduced to zero.

28. At no time did the Ventura County or the Governor, nor any official offer to compensate Plaintiffs in exchange for the total regulatory seizure of his property.

## ARGUMENT FOR THE REMEDY OF INJUNCTION

### 1. INJUNCTION REQUESTED

6

1    Plaintiffs seeks a Permanent Injunction prohibiting Defendant and future Governors from

2    issuing any Emergency Order that deprives a business owner of the right to operate the

3    business, unless the order is necessary to free up essential equipment and manpower for critical

4    uses, or is accompanied by a directive to justly compensate the business owner for fair market

5    value lost as a direct and proximate result of the order.

6          ## 2.   LEGAL STANDARD FOR INJUNCTION

7          The *sine qua non* of injunctive relief is a showing of irreparable injury and the inadequacy

8    of legal remedies. See *Sampson v. Murray*, 415 U.S. 61, 88 (1974). Generally, the party

9    requesting injunctive relief must establish the likelihood of irreparable harm if the injunction is

10   not entered and that other remedies at law are inadequate.

11         There is a balancing test that courts typically employ in determining whether to issue an

12   injunction. To seek a permanent injunction, the plaintiffs must pass the four-step test: (1) that

13   the plaintiffs have suffered an irreparable injury; (2) that remedies available at law, such as

14   monetary damages, are inadequate to compensate for the injury; (3) that the remedy in equity is

15   warranted upon consideration of the balance of hardships between the plaintiffs and defendant;

16   and (4) that the permanent injunction being sought would not hurt public interest. See, e.g.,

17   *Weinberger v. Romero—Barcelo*, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91

18   (1982); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542

19   (1987).

20

21         ## 3.   PLAINTIFF SUFFERED IRREPARABLE INJURY

22   Here, Plaintiffs have suffered irreparable injury under the Fifth Amendment. Plaintiffs did

23   nothing wrong, yet is faced with a taking comprising the total loss of the Business, valued at

24   $250,000. Moreover, Plaintiffs suffered an injury to liberty, as the Shutdown Order deprived

25   Plaintiff of the right operate *any* business not deemed "essential".

26

27

28                                                7

---

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT

1    Deprivation of fundamental liberty interests, no matter how brief, are considered to

2   irreparable. In fact, "when an alleged deprivation of a constitutional right is involved, most

3   courts hold that *no further showing of irreparable injury is necessary*." See, e.g., *Overstreet v.*

4   *Lexington-Fayette Urban Cty. Gov't, 305 F.3d 566 (6th Cir. 2002)* at 578 (a plaintiffs can

5   demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon

6   a violation of plaintiffs constitutional rights); *ACLU of KY v. McCreary County, Kentucky*, 354

7   F.3d 438, 445 (6th Cir. 2003) (if it is found that a constitutional right is being threatened or

8   impaired, a finding of irreparable injury is mandated); *Connection Distrib. Co. v. Reno*, 154

9   F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a

10   minimal period of time, constitutes irreparable harm) (citations omitted); *Council of Alternative*

11   *Political Parties v. Hooks*, 121 F.3d 876 (3rd Cir. 1997) (denial of preliminary injunctive relief

12   was irreparable harm to plaintiffs' voting and associational rights); *Covino v. Patrissi*, 967 F.2d

13   73, 77 (2d Cir. 1992) (holding that plaintiffs may establish irreparable harm based on an

14   alleged violation of their Fourth Amendment rights*); McDonell v. Hunter*, 746 F.2d 785, 787

15   (8th Cir. 1984) (finding that a violation of privacy constitutes an irreparable harm); *Mitchell v.*

16   *Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (holding allegation of violation of Eighth

17   Amendment rights sufficient showing of irreparable harm); *Doe v. Mundy*, 514 F.2d 1179 (7th

18   Cir 1975) (denial of constitutional privacy right was irreparable harm); *Beerheide v. Zavaras*,

19   997 F.Supp. 1405 (D.C. Colo. 1998) (irreparable harm satisfied by allegation of deprivation of

20   free exercise of religion).

21    **4.   PLAINTIFF HAS INADEQUATE REMEDY AT LAW**

22   To the best of Plaintiffs knowledge, no statutory remedy exists for this injury. While Plaintiffs

23   seeks just compensation, the requested Injunction is also necessary, for two independent

24   reasons. First, as discussed above, the constitutional injury is irreparable and not adequately

25   addressed by money damages. Second, an injunction prohibiting further enforcement of an

26   unconstitutional law will prevent further injury to Plaintiffs, and will prevent future injuries to

27   others. See "Public Interest", *infra*.

28                                                                                    8

### a.    Balance of Hardships Strongly Favors Plaintiff

The balance of hardships strongly favors issuing the injunction. Plaintiffs does not deny that promoting the public health is a legitimate interest of Defendant. But Defendant has not attempted, let alone succeeded in showing that the spread of Covid-19 was affected by the Shutdown Order. South Korea effectively promoted the public health without any such Shutdown Order. *Supra.* Thus, Defendant suffers no hardship from the issuance of the requested Injunction.

On the other hand, Plaintiffs has suffered extreme hardship – the loss of profits and inability to operate a legitimate business - and will continue to suffer catastrophic losses unless and until the requested Injunction is issued.

### b.    The Requested Injunction is in the Public Interest, Denying it is Against the Public Interest

The requested Injunction promotes the public interest of a well-functioning economy, while not harming the interest of public health. While public health is undeniably in the public interest, no connection has been shown between the Shutdown Order and any slowing of the spread of Covid-19. In fact, the example of South Korea shows the opposite. *Supra.* Moreover, the functioning of the retail sector of the economy is very much in the public interest, the designation of such businesses as "non-essential" notwithstanding.

### 5.   PRAYER FOR RELIEF

Wherefore, Plaintiffs prays for relief as follows:

Permanent Injunction prohibiting Defendant and future Emergency Order that deprives an otherwise law-abiding business owner of the right to operate the business in an economically productive manner by utilizing any Tangible Property at any Physical Location legally controlled by the business owner, unless at least one of the two following conditions are met: (1) the Emergency Order contains a directive to justly compensate the business owner for fair market value lost as a direct and proximate result of said Emergency Order; or (2) the Emergency Order is necessary to free up essential equipment and manpower for critical uses,

9

1   and only after an appellate review of any classification determining which businesses, which

2   equipment, and which manpower are and are not deemed critical;

3        Costs of the suit and attorney fees  as allowed by statute; and Any

4        other such relief as the Court may deem proper.

5

6

7                  Respectfully submitted on January 13, 2021

8

9                              */S/ Ronda Baldwin Kennedy*

10                             Ronda Baldwin Kennedy

11                             *Attorney for Plaintiff's*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    10

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY JUDGMENT