# Exhibit 1

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*<br>VENTURA<br>SUPERIOR COURT<br>**FILED**<br><br>JAN 19 2021<br><br>MICHAEL D. PLANET<br>Executive Officer and Clerk<br>BY: _____, Deputy<br>YVETTE MADRIGAL |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

MRS. OLSON'S COFFEE HUT, a proprietorship; WILLIAM THOMAS BRIMIGION, JR., individually and dba MRS. OLSON'S COFFEE HUT; MATT BRIMIGION, individually; and DOES 1-1000, incl.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

County of Ventura and Robert Levin, M.D., in his capacity as Health Officer for Ventura County

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Ventura County Superior Court, 800 South Victoria Avenue, Ventura, California 93009 | CASE NUMBER: *(Número del Caso):*<br>56-2021-00549555-CU-MC-VTA |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Jaclyn Smith, Assistant County Counsel, S/B 274311, 800 S. Victoria Avenue, L/C 1830, Ventura, CA 93009 (805) 654-2773

| DATE:<br>*(Fecha)* | 1/19/2021 | Clerk, by<br>*(Secretario)* | YVETTE MADRIGAL | Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courts.ca.gov |

1 | MICHAEL G. WALKER, State Bar No. 150554
County Counsel, County of Ventura
2 | JACLYN SMITH, State Bar No. 274311
Assistant County Counsel
3 | KAREN MARBLE, State Bar No. 180197
Assistant County Counsel
4 | 800 South Victoria Avenue, L/C #1830
Ventura, California 93009
5 | Telephone:   (805) 654-2590
Facsimile:    (805) 654-2185
6 | E-mail:       karen.marble@ventura.org

VENTURA
SUPERIOR COURT
FILED

JAN 19 2021

MICHAEL D. PLANET
Executive Officer and Clerk
BY:_____, Deputy

YVETTE MADRIGAL

7 | Attorneys for Plaintiffs County of Ventura
and Robert Levin, M.D., in His Capacity as
8 | Health Officer for Ventura County

**(EXEMPT FROM FILING
FEES [Gov. Code, § 6103].)**

9

10 | SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

11

12 | COUNTY OF VENTURA and ROBERT )
LEVIN, M.D., in his capacity as Health )
13 | Officer for Ventura County, )

No. 56-2021-00549555-CU-MC-VTA

VERIFIED COMPLAINT FOR
TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND
PERMANENT INJUNCTION FOR
VIOLATION OF HEALTH ORDERS
AND FOR PUBLIC NUISANCE

14 | Plaintiffs, )

15 | vs. )

16 | MRS. OLSON'S COFFEE HUT, a )
proprietorship; WILLIAM THOMAS )
17 | BRIMIGION, JR., individually and dba )
MRS. OLSON'S COFFEE HUT; MATT )
18 | BRIMIGION, individually; and DOES 1- )
1000, inclusive, )

[Deemed verified pursuant to Code Civ.
Proc., § 446]

19

20 | Defendants. )

21 | Plaintiffs County of Ventura and Robert Levin, M.D., in his capacity as Health

22 | Officer for Ventura County, allege as follows:

**General Allegations**

24 | 1. Plaintiff County of Ventura is and at all times relevant herein was a political

25 | subdivision of the State of California (hereafter "County").

26 | 2. Plaintiff Robert Levin, M.D., is and all time since 1998 has been the duly

27 | appointed health officer for the County and for all cities within Ventura County (hereafter

28 | "County Health Officer").

1

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

1   novel coronavirus (hereafter "COVID-19"). The declaration of state of emergency
2   remains in effect. On March 12, 2020, the Governor issued Executive Order N-25-20
3   ordering all state residents to heed any orders and guidance of state and local public
4   health officials with respect to COVID-19. A true and correct copy of Executive Order
5   N-25-20 is attached hereto as Exhibit A and incorporated herein by reference.

6          10. On March 12, 2020, the County Health Officer declared a local health
7   emergency pursuant to Health and Safety Code section 101080 due to the COVID-19
8   pandemic. On March 17, 2020, the County Board of Supervisors adopted a resolution
9   proclaiming that a local emergency and a local health emergency exist in Ventura County
10  due to the COVID-19 pandemic and ratifying the declaration of local health emergency
11  by the County Health Officer. The proclamation of local emergency and declaration of
12  local health emergency remain in effect.

13         11. The Governor's Proclamation of a State Emergency issued on March 4, 2020,
14  waived the 30-day time period in Health and Safety Code section 101080, within which a
15  local governing authority must renew a local health emergency for the duration of the
16  statewide emergency.

17         12. On March 19, 2020, the Governor issued Executive Order N-33-20 ordering
18  all residents to immediately heed the current state public health directives. A true and
19  correct copy of Executive Order N-33-20 is attached hereto as Exhibit B and incorporated
20  herein by reference. Within that executive order, the State Public Health Officer and the
21  Director of the California Department of Public Health (hereafter "CDPH"), ordered,
22  among other things, that all individuals stay home except as essential needs required.

23         13. Since the initial COVID-19 declaration was made in March 2020, the State –
24  through executive orders of the Governor as well as orders and guidance documents
25  promulgated by the State Public Health Officer – has issued evolving regulations
26  governing industry, businesses and activities conducted within the State during the
27  COVID-19 pandemic, tailored to meet the current demands of the health emergency.
28  / / /

3

---

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

14. On August 28, 2020, the State implemented the currently operative "Blueprint for a Safer Economy" which sets forth a tiered system based upon how prevalent COVID-19 is in each county and the extent of community spread. ("Governor Newsom Unveils Blueprint for a Safer Economy, a Statewide, Stringent and Slow Plan for Living with COVID-19" (August 28, 2020) <https://www.gov.ca.gov/2020/08/28/governor-newsom-unveils-blueprint-for-a-safer-economy-a-statewide-stringent-and-slow-plan-for-living-with-covid-19/> [as of January 8, 2021].) A true and correct copy of the California Department of Health's Blueprint for a Safer Economy Activity and Business Tiers is attached hereto as Exhibit C and incorporated herein by reference. The Blueprint for a Safer Economy restricts when sectors and activities may operate indoors and limits how many people may participate based on transmission risk. The tiered system consists of four categories: purple (widespread), red (substantial), orange (moderate) and yellow (minimal). The Blueprint for a Safer Economy remains in effect as of the date this complaint is signed.

15. Under the Blueprint for a Safer Economy, in counties classified in the purple tier, restaurants are permitted to operate outdoors only with modifications. Wineries and tasting rooms are also permitted to operate outdoors only with modifications. Bars, breweries and distilleries must remain closed. (Exhibit C, at p. 4; see also Industry Guidance for Restaurants, wineries, and bars – updated December 1, 2020 <https://covid19.ca.gov/industry-guidance/> [as of January 15, 2021].)

16. The State, through the CDPH, has also issued COVID-19 Industry Guidance for Restaurants. A true and correct copy of the State's COVID-19 Industry Guidance for Restaurants is attached hereto as Exhibit D and incorporated herein by reference. The guidance restates the requirement that in counties classified in the purple tier, restaurants are only permitted to operate outdoors and must continue to follow the modifications set forth in the guidance document. The guidance requires that members of the public and staff use face coverings and requires certain hygiene measures are implemented. The guidance further requires that restaurants "prioritize outdoor seating and curbside pickup

4

1  to minimize cross flow of customers in enclosed environments" and "implement measures
2  to ensure physical distancing of at least six feet between workers and customers."
3  (Exhibit D, pp. 12-13.) The guidance states that restaurants "should continue to
4  encourage takeout and delivery service whenever possible." (Exhibit D, at p. 3.)
5      17. The County has been classified in the most restrictive tier, the purple tier,
6  since November 16, 2020, due to the high rate of COVID-19 transmission in the County.
7  Businesses, such as restaurants, that were impacted by the move to the purple tier were to
8  make their operational modifications by midnight November 17, 2020.
9      18. COVID-19 spreads by way of person-to-person contact. The virus spreads
10 easily and sustainably, as demonstrated by the continuous rise in the number of persons
11 infected by the disease both locally and nationally. COVID-19 continues to present an
12 imminent and proximate threat to the residents of Ventura County. It is essential to
13 control the spread of COVID-19 as much as possible and prevent the health care system
14 from being overwhelmed.
15     19. California is presently experiencing a massive surge in COVID-19 infections,
16 hospitalizations and deaths.
17     20. In light of the current "unprecedented rise in the rate of increase in COVID-19
18 cases, hospitalizations, and test positivity rates across California," the State Public Health
19 Officer issued a Regional Stay-At-Home Order ("Regional Order") on December 3, 2020.
20 A true and correct copy of the Regional Order is attached hereto as Exhibit E and
21 incorporated herein by reference. According to the State Public Health Officer,
22 "[b]ecause the rate of increases in new cases continues to escalate and threatens to
23 overwhelm the [S]tate's hospital system, further aggressive action is necessary to respond
24 to the quickly evolving situation." (Exhibit E, at p. 1.) The Regional Order applies in
25 regions of the State with less than 15 percent ICU bed capacity. (Exhibit E, § 2.)
26 Pursuant to the Regional Order, "[a]ll gatherings with members of other households are
27 prohibited . . . except as expressly permitted [in the order]." (Exhibit E, § 2(a).) The
28 Regional Order further requires that "[a]ll individuals living in the Region shall stay

5

1    home or at their place of residence except as necessary to conduct activities associated

2    with the operation, maintenance, or usage of critical infrastructure, as required by law, or

3    as specifically permitted by this order." (Exhibit E, § 2(b).)

4         21. Under the Regional Order, restaurants can stay open for takeout and delivery

5    only. As such, under the Regional Order, neither outdoor nor indoor dining is permitted.

6    "Food and Agriculture" is classified as part of California's Essential Critical

7    Infrastructure Workforce. (See Exhibit E, § 2(b), footnote 1 and "Essential Workforce"

8    (December 3, 2020) <https://covid19.ca.gov/essential-workforce/> [as of January 8,

9    2020].) Pursuant to the Essential Critical Infrastructure Workforce and the Regional

10   Order, "[w]orkers supporting restaurant carry-out and quick serve food operations,

11   including food preparation, carry-out and delivery food employees" are permitted to

12   continue working while the Regional Order is in effect. (*Ibid.*)

13        22. The Regional Order "shall remain in place for at least three weeks from the

14   date the order takes effect in a Region and shall continue until CDPH's four-week

15   projections of the Region's total available adult ICU bed capacity is greater than or equal

16   to 15%." (Exhibit E, §§ 4 & 6.) After the termination of the Regional Order, "each

17   county within the Region will be assigned to a tier based on the Blueprint for a Safer

18   Economy" and the county is subject to the restrictions of the Blueprint appropriate to that

19   tier. (Exhibit E, § 7.)

20        23. The County is located within the Southern California Region, which fell under

21   the purview of the Regional Order as of December 6, 2020. As of the date of the signing

22   of this complaint, the ICU capacity in the Southern California Region remains at

23   0 percent and the Regional Order remains in effect. Hereinafter, the Blueprint for a Safer

24   Economy and the Regional Order shall be referred to as the "Health Orders."

25        24. Pursuant to Government Code section 8634, during a local emergency, the

26   County Health Officer may promulgate orders as necessary to provide for the protection

27   of life and property.

28   ///

6

25. Pursuant to Health and Safety Code section 101040, subdivision (a), the County Health Officer "may take any preventive measure that may be necessary to protect and preserve the public health from any public health hazard during any 'state of war emergency,' 'state of emergency,' or 'local emergency,' as defined by Section 8558 of the Government Code, within his or her jurisdiction." Furthermore, pursuant to Health and Safety Code section 120175, the County Health Officer, "knowing or having reason to believe that any case of the diseases made reportable by regulation of [CDPH], or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases."

26. On or around December 21, 2020, in response to receiving several complaints from the public about on-site dining at the Property, the Ventura County Environmental Health Division ("EHD") conducted an inspection at the Property. During the inspection, persons were observed dining both indoors and outdoors at the Property. Customers dining indoors and outdoors were not wearing facial coverings. EHD investigators spoke with Operator and explained the purpose for the visit and that current Health Orders prohibit both indoor and outdoor dining. Operator stated that he was aware of the requirements but would not comply.

27. On or around December 21, 2020, a supervisor from EHD spoke with Operator and Kelsey Taylor ("Taylor"), another person-in-charge at the Coffee Hut, to attempt to dissuade them from operating the Coffee Hut in defiance of the Health Orders. The EHD supervisor was not successful in convincing Operator or Taylor to comply with the Health Orders despite the supervisor informing them that EHD would suspend Coffee Hut's permit to operate if they failed to come into compliance. However, Operator and Taylor stated that they were aware of the requirements but would not comply.

28. On or around December 22, 2020, the County Health Officer issued a closure order ("Closure Order") to the Coffee Hut. A true and correct copy of the Closure Order is attached hereto as Exhibit F and incorporated herein by reference.

7

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

1    29. On or around December 22, 2020, two investigators from EHD visited the

2  Coffee Hut and delivered the Closure Order to Operator. While delivering the Closure

3  Order, the investigators observed persons dining both indoors and outdoors at the Coffee

4  Hut.

5    30. On or around December 23, 2020, an investigator from EHD observed persons

6  dining on the Coffee Hut's outdoor patio.

7    31. On or around January 11, 2021, EHD issued a Notice of Temporary

8  Suspension of Permit and Order of Immediate Closure ("Suspension of Permit") to the

9  Coffee Hut. A true and correct copy of the Notice of Temporary Suspension of Permit

10  and Order of Immediate Closure is attached hereto as Exhibit G and incorporated herein

11  by reference.

12    32. On or around January 11, 2021, an investigator from EHD visited the Coffee

13  Hut and delivered the Suspension of Permit to Operator. While delivering the Suspension

14  of Permit, the investigator observed persons dining on the Coffee Hut's outdoor patio.

15  On or around January 13, 2021, an investigator from EHD again observed persons dining

16  on the Coffee Hut's outdoor patio.

17    33. Under the Closure Order and the Suspension of Permit, the Coffee Hut,

18  Owner, Operator and Does 1-1,000 are ordered to cease all food operations at the

19  Property.

20    34. Following receipt of such Closure Order and Suspension of Permit, the Coffee

21  Hut, Owner, Operator and Does 1-1,000 continued to operate the restaurant and have

22  repeatedly allowed on-site dining at the Property in violation of the Health Orders, the

23  Closure Order and the Suspension of Permit.

24              **FIRST CAUSE OF ACTION**

25           **VIOLATION OF HEALTH ORDERS**

26             **(Against All Defendants)**

27    35. Plaintiffs reallege and incorporate by reference paragraphs 1 through 34 of

28  this complaint.

8

36. The wrongful conduct of defendants, and each of them, as alleged herein, unless and until enjoined and restrained by the court, will cause and continue to cause great and irreparable injury to the general public, including all persons within Ventura County, by creating a significant risk of further community spread of COVID-19, including hospitalizations and deaths, which in turn is likely to result in continued and further restrictions on businesses and other operations and activities within Ventura County, detrimentally affecting the quality of life of the entire community.

37. Plaintiffs have no adequate remedy at law because the amount of the damages to the general public's health, safety and welfare is unascertainable and damages cannot compensate for the societal disruption, illnesses and deaths caused by the callous disregard of health orders during a global pandemic.

## SECOND CAUSE OF ACTION

## PUBLIC NUISANCE

### (Against All Defendants)

38. Plaintiffs reallege and incorporate by reference paragraphs 1 through 37 of this complaint.

39. The wrongful conduct of defendants, and each of them, as alleged herein, constitutes a public nuisance per se.

## PRAYER

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as to all causes of action as follows:

A. For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining and prohibiting defendants, and each of them, and their agents, employees, representatives, members, and volunteers, and all persons acting under, in concert with or for them, from violating state public health orders, as they pertain to the operation of restaurants, as well as the Closure Order;

///

///

9

1    B. For costs of suit; and

2    C. For such other and further relief as the court deems just and proper.

3                                    MICHAEL G. WALKER
                                     County Counsel, County of Ventura
4

5    Dated: January 19, 2021          By  *Karen Marble*
6                                          KAREN MARBLE
                                           Assistant County Counsel
7
                                     Attorneys for Plaintiffs County of Ventura
8                                    and Robert Levin, M.D., in His Capacity as
                                     Health Officer for Ventura County
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        10

Mrs. Olsen's Coffee Hut

# Exhibit A

EXECUTIVE DEPARTMENT
STATE OF CALIFORNIA

### EXECUTIVE ORDER N-25-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** despite sustained efforts, the virus remains a threat, and further efforts to control the spread of the virus to reduce and minimize the risk of infection are needed; and

**WHEREAS** state and local public health officials may, as they deem necessary in the interest of public health, issue guidance limiting or recommending limitations upon attendance at public assemblies, conferences, or other mass events, which could cause the cancellation of such gatherings through no fault or responsibility of the parties involved, thereby constituting a force majeure; and

**WHEREAS** the Department of Public Health is maintaining up-to-date guidance relating to COVID-19, available to the public at http://cdph.ca.gov/covid19; and

**WHEREAS** the State of California and local governments, in collaboration with the Federal government, continue sustained efforts to minimize the spread and mitigate the effects of COVID-19; and

**WHEREAS** there is a need to secure numerous facilities to accommodate quarantine, isolation, or medical treatment of individuals testing positive for or exposed to COVID-19; and

**WHEREAS**, many individuals who have developmental disabilities and receive services through regional centers funded by the Department of Developmental Services also have chronic medical conditions that make them more susceptible to serious symptoms of COVID-19, and it is critical that they continue to receive their services while also protecting their own health and the general public health; and

**WHEREAS** individuals exposed to COVID-19 may be temporarily unable to report to work due to illness caused by COVID-19 or quarantines related to COVID-19 and individuals directly affected by COVID-19 may experience potential loss of income, health care and medical coverage, and ability to pay for housing and basic needs, thereby placing increased demands on already strained regional and local health and safety resources such as shelters and food banks; and

**WHEREAS** in the interest of public health and safety, it is necessary to exercise my authority under the Emergency Services Act, specifically Government Code section 8572, to ensure adequate facilities exist to address the impacts of COVID-19; and

**Exhibit A, Page 1 of 5**

**WHEREAS** under the provisions of Government Code section 8571, I find that strict compliance with various statutes and regulations specified in this order would prevent, hinder, or delay appropriate actions to prevent and mitigate the effects of the COVID-19 pandemic.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8571 and 8572, do hereby issue the following order to become effective immediately:

IT IS HEREBY ORDERED THAT:

1. All residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19.

2. For the period that began January 24, 2020 through the duration of this emergency, the Employment Development Department shall have the discretion to waive the one-week waiting period in Unemployment Insurance Code section 2627(b)(1) for disability insurance applicants who are unemployed and disabled as a result of the COVID-19, and who are otherwise eligible for disability insurance benefits.

3. For the period that began January 24, 2020 through the duration of this emergency, the Employment Development Department shall have the discretion to waive the one-week waiting period in Unemployment Insurance Code section 1253(d) for unemployment insurance applicants who are unemployed as a result of the COVID-19, and who are otherwise eligible for unemployment insurance benefits.

4. Notwithstanding Health and Safety Code section 1797.172(b), during the course of this emergency, the Director of the Emergency Medical Services Authority shall have the authority to implement additions to local optional scopes of practice without first consulting with a committee of local EMS medical directors named by the EMS Medical Directors Association of California.

5. In order to quickly provide relief from interest and penalties, the provisions of the Revenue and Taxation Code that apply to the taxes and fees administered by the Department of Tax and Fee Administration, requiring the filing of a statement under penalty of perjury setting forth the facts for a claim for relief, are suspended for a period of 60 days after the date of this Order for any individuals or businesses who are unable to file a timely tax return or make a timely payment as a result of complying with a state or local public health official's imposition or recommendation of social distancing measures related to COVID-19.

6. The Franchise Tax Board, the Board of Equalization, the Department of Tax and Fee Administration, and the Office of Tax Appeals shall use their administrative powers where appropriate to provide those individuals and businesses impacted by complying with a state or local public health official's imposition or recommendation of social

**Exhibit A, Page 2 of 5**

distancing measures related to COVID-19 with the extensions for filing, payment, audits, billing, notices, assessments, claims for refund, and relief from subsequent penalties and interest.

7. The Governor's Office of Emergency Services shall ensure adequate state staffing during this emergency. Consistent with applicable federal law, work hour limitations for retired annuitants, permanent and intermittent personnel, and state management and senior supervisors, are suspended. Furthermore, reinstatement and work hour limitations in Government Code sections 21220, 21224(a), and 7522.56(b), (d), (f), and (g), and the time limitations in Government Code section 19888.1 and California Code of Regulations, title 2, sections 300-303 are suspended. The Director of the California Department of Human Resources must be notified of any individual employed pursuant to these waivers.

8. The California Health and Human Services Agency and the Office of Emergency Services shall identify, and shall otherwise be prepared to make available—including through the execution of any necessary contracts or other agreements and, if necessary, through the exercise of the State's power to commandeer property – hotels and other places of temporary residence, medical facilities, and other facilities that are suitable for use as places of temporary residence or medical facilities as necessary for quarantining, isolating, or treating individuals who test positive for COVID-19 or who have had a high-risk exposure and are thought to be in the incubation period.

9. The certification and licensure requirements of California Code of Regulations, Title 17, section 1079 and Business and Professions Code section 1206.5 are suspended as to all persons who meet the requirements under the Clinical Laboratory Improvement Amendments of section 353 of the Public Health Service Act for high complexity testing and who are performing analysis of samples to test for SARS-CoV-2, the virus that causes COVID-19, in any certified public health laboratory or licensed clinical laboratory.

10. To ensure that individuals with developmental disabilities continue to receive the services and supports mandated by their individual program plans threatened by disruptions caused by COVID-19, the Director of the Department of Developmental Services may issue directives waiving any provision or requirement of the Lanterman Developmental Disabilities Services Act, the California Early Intervention Services Act, and the accompanying regulations of Title 17, Division 2 of the California Code of Regulations. A directive may delegate to the regional centers any authority granted to the Department by law where the Director believes such delegation is necessary to ensure services to individuals with developmental disabilities. The Director shall describe the need justifying the waiver granted in each directive and articulate how the waiver is necessary to protect the public health or safety from the threat of COVID-19 or necessary to ensure that services to individuals with developmental disabilities are not disrupted. Any waiver granted by a directive shall expire 30 days from the date of its issuance. The Director may grant one or more 30-day extensions if the waiver continues to be necessary

**Exhibit A, Page 3 of 5**

to protect health or safety or to ensure delivery of services. The Director shall rescind a waiver once it is no longer necessary to protect public health or safety or ensure delivery of services. Any waivers and extensions granted pursuant to this paragraph shall be posted on the Department's website.

11. Notwithstanding any other provision of state or local law, including the Bagley-Keene Act or the Brown Act, a local legislative body or state body is authorized to hold public meetings via teleconferencing and to make public meetings accessible telephonically or otherwise electronically to all members of the public seeking to attend and to address the local legislative body or state body, during the period in which state or local public officials impose or recommend measures to promote social distancing, including but not limited to limitations on public events. All requirements in both the Bagley-Keene Act and the Brown Act expressly or impliedly requiring the physical presence of members, the clerk or other personnel of the body, or of the public as a condition of participation in or quorum for a public meeting are hereby waived.

In particular, any otherwise-applicable requirements that

(i)     state and local bodies notice each teleconference location from which a member will be participating in a public meeting;
(ii)    each teleconference location be accessible to the public;
(iii)   members of the public may address the body at each teleconference conference location;
(iv)    state and local bodies post agendas at all teleconference locations;
(v)     at least one member of the state body be physically present at the location specified in the notice of the meeting; and
(vi)    during teleconference meetings, a least a quorum of the members of the local body participate from locations within the boundaries of the territory over which the local body exercises jurisdiction

are hereby suspended, on the conditions that:

(i)     each state or local body must give advance notice of each public meeting, according to the timeframe otherwise prescribed by the Bagley-Keene Act or the Brown Act, and using the means otherwise prescribed by the Bagley-Keene Act or the Brown Act, as applicable; and
(ii)    consistent with the notice requirement in paragraph (i), each state or local body must notice at least one publicly accessible location from which members of the public shall have the right to observe and offer public comment at the public meeting, consistent with the public's rights of access and public comment otherwise provided for by the Bagley-Keene Act and the Brown Act, as applicable (including, but not limited to, the requirement that such rights of access and public comment be made available in a manner consistent with the Americans with Disabilities Act)

**Exhibit A, Page 4 of 5**

In addition to the mandatory conditions set forth above, all state and local bodies are urged to use sound discretion and to make reasonable efforts to adhere as closely as reasonably possible to the provisions of the Bagley-Keene Act and the Brown Act, and other applicable local laws regulating the conduct of public meetings, in order to maximize transparency and provide the public access to their meetings.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

IN WITNESS WHEREOF I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 12th day of March 2020.

GAVIN NEWSOM
Governor of California

ATTEST:

ALEX PADILLA
Secretary of State

**Exhibit A, Page 5 of 5**

**Exhibit B**

EXECUTIVE DEPARTMENT
STATE OF CALIFORNIA

### EXECUTIVE ORDER N-33-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or

destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

GAVIN NEWSOM
Governor of California

**ATTEST:**

ALEX PADILLA
Secretary of State

# Exhibit C

# Blueprint for a Safer Economy

## Activity and Business Tiers

| SECTORS | Widespread<br>Tier 1 | Substantial<br>Tier 2 | Moderate<br>Tier 3 | Minimal<br>Tier 4 |
|---|---|---|---|---|
| **Critical Infrastructure** | Open<br>with modifications | Open<br>with modifications | Open<br>with modifications | Open<br>with modifications |
| **Gatherings*** | Outdoor gatherings only with modifications<br>• Max 3 households | Indoor gatherings strongly discouraged, allowed with modifications<br>• Max 3 households | Indoor gatherings strongly discouraged, allowed with modifications<br>• Max 3 households | Indoor gatherings strongly discouraged, allowed with modifications<br>• Max 3 households |
| **Limited Services** | Open<br>with modifications | Open<br>with modifications | Open<br>with modifications | Open<br>with modifications |
| **Outdoor Playgrounds & Outdoor Recreational Facilities **** | Open<br>with modifications | Open<br>with modifications | Open<br>with modifications | Open<br>with modifications |
| **Hair Salons & Barbershops** | Open Indoors<br>with modifications | Open indoors<br>with modifications | Open indoors<br>with modifications | Open indoors<br>with modifications |

1

| SECTORS | Widespread<br>Tier 1 | Substantial<br>Tier 2 | Moderate<br>Tier 3 | Minimal<br>Tier 4 |
|---|---|---|---|---|
| **All Retail**<br>(including critical infrastructure, except standalone grocers) | Open Indoors<br>with modifications<br>• Max 25% capacity | Open Indoors<br>with modifications<br>• Max 50% capacity | Open Indoors<br>with modifications | Open Indoors<br>with modifications |
| **Shopping Centers (Malls, Destination Centers, Swap Meets)** | Open Indoors<br>with modifications<br>• Max 25% capacity<br>• Closed common areas<br>• Closed food courts | Open indoors<br>with modifications<br>• Max 50% capacity<br>• Closed common areas<br>• Reduced capacity food courts (see restaurants) | Open indoors<br>with modifications<br>• Closed common areas<br>• Reduced capacity food courts (see restaurants) | Open Indoors<br>with modifications<br>• Reduced capacity food courts (see restaurants) |
| **Personal Care Services*** | Open Indoors<br>with modifications | Open indoors<br>with modifications | Open indoors<br>with modifications | Open indoors<br>with modifications |
| **Museums, Zoos, and Aquariums** | Outdoor Only<br>with modifications | Open indoors<br>with modifications<br>• Indoor activities max 25% capacity | Open indoors<br>with modifications<br>• Indoor activities max 50% capacity | Open indoors<br>with modifications |

2

**Exhibit C, Page 2 of 6**

| SECTORS | Widespread<br>Tier 1 | Substantial<br>Tier 2 | Moderate<br>Tier 3 | Minimal<br>Tier 4 |
|---|---|---|---|---|
| **Places of Worship** | Outdoor Only<br>with modifications | Open indoors<br>with modifications<br>• Max 25% capacity or 100 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity or 200 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity |
| **Movie Theaters** | Outdoor Only<br>with modifications | Open Indoors<br>with modifications<br>• Max 25% capacity or 100 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity or 200 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity |
| **Hotels and Lodging** | Open<br>with modifications | Open<br>with modifications<br>• +Fitness centers (+10%) | Open<br>with modifications<br>• +Fitness centers (+25%)<br>• +Indoor pools | Open<br>with modifications<br>• +Fitness Centers (50%)<br>• +Spa facilities etc. |
| **Gyms and Fitness Centers** | Outdoor Only<br>with modifications | Open indoors<br>with modifications<br>• Max 10% capacity<br>• +Climbing walls | Open indoors<br>with modifications<br>• Max 25% capacity<br>• +Indoor pools | Open indoors<br>with modifications<br>• +Saunas<br>• +Steam rooms<br>• Max 50% capacity |

3

| SECTORS | Widespread<br>Tier 1 | Substantial<br>Tier 2 | Moderate<br>Tier 3 | Minimal<br>Tier 4 |
|---|---|---|---|---|
| **Restaurants** | Outdoor Only<br>with modifications | Open indoors<br>with modifications<br>• Max 25% capacity or 100 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity or 200 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity |
| **Wineries** | Outdoor Only<br>with modifications | Outdoor Only<br>with modifications | Open indoors<br>with modifications<br>• Max 25% capacity indoors, or 100 people, whichever is fewer | Open indoors<br>with modifications<br>• Max 50% capacity or 200 people indoors, whichever is fewer |
| **Bars, Breweries, and Distilleries**<br>**(where no meal provided)**<br>**(follow restaurant guidance where meal is provided)** | Closed | Closed | Open Outdoors<br>with modifications | Open indoors<br>with modifications<br>• Max 50% capacity |
| **Family Entertainment Centers** | Outdoor Only<br>with modifications<br>e.g.<br>• Kart Racing<br>• Mini Golf<br>• Batting Cages | Outdoor Only<br>with modifications<br>e.g.<br>• Kart Racing<br>• Mini Golf<br>• Batting Cages | Open Indoors for naturally distanced activities<br>with modifications<br>• Max 25% capacity<br>• Bowling Alleys | Open indoors for activities with increased risk of proximity and mixing<br>with modifications<br>• Max 50% capacity<br>• Arcade Games<br>• Ice and roller skating<br>• Indoor playgrounds |

4

| SECTORS | Widespread<br>Tier 1 | Substantial<br>Tier 2 | Moderate<br>Tier 3 | Minimal<br>Tier 4 |
|---|---|---|---|---|
| **Cardrooms, Satellite Wagering** | Outdoor Only<br>with modifications | Outdoor Only<br>with modifications | Open indoors<br>with modifications<br>• Max 25% capacity | Open indoors<br>with modifications<br>• Max 50% capacity |
| **Offices** | Remote | Remote | Open indoors<br>with modifications<br>• Encourage telework | Open indoors<br>with modifications<br>• Encourage telework |
| **Professional Sports** | Open<br>• Without live audiences<br>• With modifications | Open<br>• Without live audiences<br>• With modifications | Open<br>• Without live audiences<br>• With modifications | Open<br>• Without live audiences<br>• With modifications |
| **Live Audience Sports\*\*\*** | Closed | Closed | Outdoors Only<br>• Max 20%<br>• Regional visitors (120 miles)<br>• Advanced reservations only<br>• Assigned seating only<br>• In-seat concessions only (No concourse sales) | Outdoors Only<br>• Max 25%<br>• Regional visitors (120 miles)<br>• Advanced reservations only<br>• Assigned seating only<br>• In-seat concessions only (No concourse sales) |

5

| SECTORS | Widespread Tier 1 | Substantial Tier 2 | Moderate Tier 3 | Minimal Tier 4 |
|---|---|---|---|---|
| Amusement Parks*** | Closed | Closed | Smaller Parks Open<br><br>• 25% capacity or 500 people, whichever is fewer<br>• Outdoor attractions only<br>• In-county visitors only<br>• Advanced reservations only | Larger Parks Open<br><br>• 25% capacity<br>• Advanced reservations only |

*Gatherings updated November 13, 2020

**Outdoor playgrounds and outdoor recreational facilities updated September 28, 2020

***Personal care services, live audience professional sports and amusement parks updated October 20, 2020

6

**Exhibit C, Page 6 of 6**

# Exhibit D





# COVID-19 INDUSTRY GUIDANCE:
## Restaurants

**November 24, 2020**

*This guidance is designed to address sectors and activities opening statewide. However, local health officers may implement more stringent rules tailored to local epidemiological conditions, so employers should also confirm relevant local opening policies.*



# OVERVIEW

On March 19, 2020, the State Public Health Officer and Director of the California Department of Public Health issued an order requiring most Californians to stay at home to disrupt the spread of COVID-19 among the population.

The impact of COVID-19 on the health of Californians is not yet fully known. Reported illness ranges from very mild (some people have no symptoms) to severe illness that may result in death. Certain groups, including people aged 65 or older and those with serious underlying medical conditions, such as heart or lung disease or diabetes, are at higher risk of hospitalization and serious complications. Transmission is most likely when people are in close contact or in a poorly ventilated area with an infected person, even if that person does not have any symptoms or has not yet developed symptoms.

Precise information about the number and rates of COVID-19 by industry or occupational groups, including among critical infrastructure workers, is not available at this time. There have been multiple outbreaks in a range of workplaces, indicating that workers are at risk of acquiring or transmitting COVID-19 infection. Examples of these workplaces include hospitals, long-term care facilities, prisons, food production, warehouses, meat processing plants, restaurants, and grocery stores.

As stay-at-home orders are modified, it is essential that all possible steps be taken to ensure the safety of workers and the public.

Key prevention practices include:
- ✓ ensuring adequate ventilation in all spaces,
- ✓ physical distancing to the maximum extent possible,
- ✓ use of face coverings by workers (where respiratory protection is not required) and customers/clients,
- ✓ frequent handwashing and regular cleaning and disinfection,
- ✓ training workers on these and other elements of the COVID-19 prevention plan.

In addition, it will be critical to have in place appropriate processes to identify new cases of illness in workplaces and, when they are identified, to intervene quickly and work with public health authorities to halt the spread of the virus.

# PURPOSE

This document provides guidance for restaurants to support a safe, clean environment for workers and customers. Businesses must identify and monitor the County Risk Level for the county the business is operating in and make required adjustments to their operations:

- **Purple – Widespread – Tier 1:** Outdoor operations are permitted and must continue to follow the modifications in this guidance. Performers must maintain physical distancing from spectators and other performers. Performers who are singing, shouting, playing a wind instrument, or engaging in similar activities without a face covering must maintain at least twelve feet of distance from spectators. Additional modifications for performances may be required by the forthcoming Live Performances guidance.

- **Red – Substantial – Tier 2:** Indoor operations are permitted but must be limited to 25% capacity or 100 people, whichever is fewer, and continue to follow the modifications in this guidance. For indoor performances, performers must wear face coverings at all times and maintain physical distancing from spectators and other performers. Performers are counted toward the occupancy capacity limit. Additional modifications for performances may be required by the forthcoming Live Performances guidance.

- **Orange – Moderate – Tier 3:** Indoor operations are permitted but must be limited to 50% capacity or 200 people, whichever is fewer, and continue to follow the modifications in this guidance. For indoor performances, performers must wear face coverings and observe all other required modifications consistent with the forthcoming Live Performance guidance. In the interim, performers must wear face coverings at all times and maintain physical distancing from spectators and other performers. Performers are counted toward the occupancy capacity limit.

- **Yellow – Minimal – Tier 4:** Indoor operations are permitted at 50% capacity and must continue to follow the modifications in this guidance. For indoor performances, performers must wear face coverings and observe all other required modifications consistent with the forthcoming Live Performance guidance. In the interim, performers must wear face coverings at all times and maintain physical distancing from spectators and other performers. Performers are counted toward the occupancy capacity limit.

For the most updated information on county tier status, visit Blueprint for a Safer Economy. Please note that local health departments can have more restrictive criteria and different closures. Find your county's local information.

**NOTE:** Restaurants should continue to encourage takeout and delivery service whenever possible. Restaurants providing takeout, drive-through pick-up, and delivery may only sell unsealed containers of alcoholic beverages (such as cocktails) when purchased in the same transaction as a meal. A meal is not required for the sale or delivery of alcoholic beverages in manufacturer-sealed containers. Restaurants should

refer to COVID-19 guidance from the California Department of Alcoholic Beverage Control. Restaurants may also have other operational aspects and service offerings covered in other guidance, which are available on the Industry Guidance to Reduce Risk website. Restaurants may not open those operations until permitted by the Blueprint and when doing so must review this guidance to apply the appropriate protocols to all aspects of operations, including:

- o Takeout and delivery (Delivery Services guidance)
- o Bars and breweries (Bars, Breweries, and Distilleries guidance)
- o Wineries and tasting rooms (Wineries and Tasting Rooms guidance)
- o Offices (Office guidance)
- o Game operations, such as bowling alleys, pool tables, etc. (Family Entertainment Centers guidance)
- o Maintenance and custodial work (Limited Services guidance)

This guidance is not intended for concert, performance, or entertainment venues. Those types of establishments should remain closed until they are allowed to resume modified or full operation through a specific reopening order or guidance.

The guidance is not intended to revoke or repeal any worker rights, either statutory, regulatory or collectively bargained, and is not exhaustive, as it does not include county health orders, nor is it a substitute for any existing or newly created safety and health-related regulatory requirements such as those of Cal/OSHA, including a pending Emergency Temporary Standard expected to go into effect soon.[i] Stay current on changes to public health guidance and state/local orders as the COVID-19 situation continues. Cal/OSHA has more comprehensive guidance on their Cal/OSHA General Guidelines on Protecting Workers from COVID-19 webpage. The U.S. Food and Drug Administration has guidance for restaurants and the CDC has additional requirements in their guidance for businesses and employers.

# Required Use of Face Coverings

Consult the CDPH Guidance on the Use of Face Coverings, which broadly requires the use of face coverings for both members of the public and workers in all public and workplace settings outside the home. Complete details, including all requirements and exemptions to these rules, can be found in the guidance, which should be checked periodically for updates.

For the most updated information on county status, visit Blueprint for a Safer Economy. Please note that local health departments can have more restrictive criteria and different closures. Find your county's local information.



# Workplace Specific Plan

- Establish a written, workplace-specific COVID-19 prevention plan at every location, perform a comprehensive risk assessment of all work areas and work tasks, and designate a person at each establishment to implement the plan.

- Incorporate the CDPH Face Covering Guidance into the Workplace Specific Plan and include a policy for handling exemptions.

- Identify contact information for the local health department where the restaurant is located for communicating information about COVID-19 outbreaks among workers or customers.

- Train and communicate with workers and worker representatives on the plan and make the plan available to workers and their representatives.

- Regularly evaluate the establishment for compliance with the plan and document and correct deficiencies identified.

- Investigate any COVID-19 illness and determine if any work-related factors could have contributed to risk of infection. Update the plan as needed to prevent further cases.

- Implement the necessary processes and protocols when a workplace has an outbreak, in accordance with CDPH guidelines and orders or guidance from the local health department.

- Identify close contacts (within six feet for a cumulative total of 15 minutes or more over a 24-hour period) of an infected person and take steps to isolate COVID-19 positive worker(s) and close contacts.

- Notify all employees in writing, and employers of subcontracted employees, who may have been exposed to COVID-19 and report workplace outbreaks to the local health department. For additional information on employer responsibilities under AB 685 (Chapter 84, Statutes of 2020), refer to the Enhanced Enforcement and Employer Reporting Requirements from Cal/OSHA and the Employer Questions about AB 685 from CDPH.

- **For outdoor operations:** Establish an effective heat illness prevention plan with written procedures in both English and the language understood by the majority of the employees. The plan must be available to employees at the worksite. See the Cal/OSHA heat illness prevention page for resources, including FAQs, a webinar, and a sample written plan. Elements of a heat illness prevent plan must include:

  o Access to potable drinking water

- o  Access to shade
- o  Cool down breaks
- o  Emergency procedures for heat illness cases
- o  High heat procedures when the temperature exceeds 95 degrees
- o  Monitoring of employees who are acclimatizing during a heat wave
- o  Training on heat illness prevention and symptoms
- • Adhere to the guidelines below. Failure to do so could result in workplace illnesses that may cause operations to be temporarily closed or limited.



# Topics for Worker Training

- • Information on COVID-19, how to prevent it from spreading, and which people are at higher risk for severe illness or death.

- • Self-screening at home, including temperature and/or symptom checks using CDC guidelines.

- • The importance of not coming to work:

  - o  If a worker has symptoms of COVID-19 as described by the CDC, such as a fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea, vomiting, or diarrhea, OR

  - o  If a worker was diagnosed with COVID-19 and has not yet been released from isolation, OR

  - o  If, within the past 14 days, a worker has had contact with someone who has been diagnosed with COVID-19 and is considered potentially infectious (i.e. still on isolation).

- • To return to work after a worker receives a COVID-19 diagnosis only after meeting CDPH Guidance on Returning to Work or School Following COVID-19 Diagnosis.

- • To seek medical attention if their symptoms become severe, including persistent pain or pressure in the chest, confusion, or bluish lips or face. Updates and further details are available on CDC's webpage.

- • The importance of frequent handwashing with soap and water, including scrubbing with soap for 20 seconds (or using hand sanitizer with at least 60% ethanol or 70% isopropanol when workers cannot get to a sink or handwashing station, per CDC guidelines). Never use hand sanitizers with methanol due to its high toxicity to both children and adults.

- The importance of physical distancing, both at work and off work time (see Physical Distancing section below).

- Proper use of face coverings, including:

  o Face coverings provide some protection to the wearer but are not designed to meet standards for filtering virus-containing particles.

  o Face coverings do not replace the need for physical distancing and frequent handwashing.

  o Face coverings must cover the nose and mouth.

  o Workers should wash or sanitize hands before and after using or adjusting face coverings.

  o Avoid touching the eyes, nose, and mouth.

  o Face coverings must not be shared and should be washed or discarded after each shift.

- Information contained in the CDPH Face Covering Guidance, which mandates the circumstances in which face coverings must be worn and the exemptions, as well as any policies, work rules, and practices the employer has adopted to ensure the use of face coverings. Training should also include the employer's policies on how people who are exempted from wearing a face covering will be handled.

- Ensure any independent contractors, temporary or contract workers, and volunteers at the facility are also properly trained in COVID-19 prevention policies and have necessary supplies and PPE. Discuss these responsibilities ahead of time with organizations supplying temporary and/or contract workers.

- Information on paid leave benefits the worker may be entitled to receive that would make it financially easier to stay at home. See additional information on government programs supporting sick leave and workers' compensation for COVID-19, including workers' sick leave rights under the Families First Coronavirus Response Act.



# Individual Control Measures and Screening

- Provide temperature and/or symptom screenings for all workers at the beginning of their shift and any vendors, contractors, or other workers entering the establishment. Make sure the temperature/symptom screener avoids close contact with workers to the extent possible.

- If requiring self-screening at home, which is an appropriate alternative to providing it at the establishment, ensure that screening was performed prior to the worker leaving the home for their shift and follows CDC guidelines, as described in the Topics for Worker Training section above.

- Encourage workers who are sick or exhibiting symptoms of COVID-19 to stay home.

- Employers must provide and ensure workers use all required protective equipment, including face coverings and gloves where necessary.

- Employers should consider where disposable glove use may be helpful to supplement frequent handwashing or use of hand sanitizer; examples are for workers who are screening others for symptoms or handling commonly touched items. Workers should wear gloves when handling items contaminated by body fluids.

- Servers, bussers, and other workers moving items used by customers (dirty cups, plates, napkins, etc.) or handling trash bags should use disposable gloves (and wash hands before putting them on and after removing them) and provide aprons and change frequently.

- Dishwashers should use equipment to protect the eyes, nose, and mouth from contaminant splash using protective glasses, goggles, or a face shield in addition to a face covering. Dishwashers must be provided impermeable aprons and change frequently. Reusable protective equipment, such as shields and glasses, should be properly disinfected between uses.

- Employers must ensure workers maintain six feet of distance from others whenever possible. When it is not possible, the length and frequency of interaction should be kept to a minimum. Where job duties require regular interaction (e.g. wait staff), employers should offer a secondary barrier (i.e. face shields or safety goggles) for use by workers who wish to use one and permit workers to use their own if they prefer.

- Employers must take reasonable measures, including public address announcements, posting signage in strategic and highly-visible locations, and in reservation confirmations, to remind the public that they must use face coverings whenever not eating or drinking (unless exempted per

the CDPH Face Covering Guidance), practice physical distancing, not touch their face, frequently wash their hands with soap and water for at least 20 seconds, and use hand sanitizer.

- Remind guests in advance to bring a face covering and make them available to anyone who arrives without one, otherwise they should not be allowed to enter the premises (unless exempted per the CDPH Face Covering Guidance).

- Guests should be temperature and/or symptom screened upon arrival, asked to use hand sanitizer, and must bring and wear a face covering when not eating or drinking if not exempted per the CDPH Face Covering Guidance. Employers have the right to cancel reservations for individuals/parties with symptomatic guests and refuse entry.

- Display a set of clearly visible rules for customers and restaurant personnel at the restaurant entrance(s) that are to be a condition of entry. The rules could include instructions to use hand sanitizer, maintain physical distance from other customers, avoid unnecessary touching of restaurant surfaces, contact information for the local health department, and changes to restaurant services. Whenever possible, the rules should be available digitally, include pictograms, and included on/with menus.



# Ventilation, Cleaning, and Disinfecting Protocols

- Restaurants should increase fresh air circulation by opening windows or doors, if possible, and in accordance with security and safety protocols.

- Position tables indoors near windows and doors to maximize air exchange and ventilation but avoid having air flow from where one party is seated directly toward another party.

- For indoor locations, maximize the amount of outdoor air supplied by ventilation systems. Install the highest efficiency filters compatible with the ventilation system.

- Where possible, install portable high-efficiency air cleaners, upgrade the building's air filters to the highest efficiency possible, and make other modifications to increase the quantity of outside air and ventilation in all working areas.

- Check the CDPH website periodically for updates on indoor air quality and ventilation guidance for airborne diseases in indoor settings.

- Perform thorough cleaning in high traffic areas, such as customer waiting areas and lobbies, break rooms, lunch areas and areas of ingress and egress including host stands, entry ways, stairways, stairwells, escalators, handrails, and elevator controls. Frequently disinfect commonly used surfaces including doors, door handles, crash bars, light switches, waiting area chairs, credit card terminals, ATM PIN pads, receipt trays, bus tubs, serving trays, phones, toilets, and handwashing facilities.

- Frequently clean items touched by patrons, especially those that might attract contact from children including candy and toy vending machines, display cases, decorative fountains, etc.

- Clean touchable surfaces between shifts or between users, whichever is more frequent, including but not limited to working surfaces, phones, registers, touchpads/touchscreens, tablets, timeclocks, appliances, kitchen and bar utensils and implements, oven doors, grill and range knobs, carts and trolleys, keys, etc.

- Avoid sharing audio equipment, phones, tablets, laptops, desks, pens, and other work supplies wherever possible. Never share PPE.

- Discontinue shared use of audio headsets and other equipment between workers unless the equipment can be properly disinfected after use. Consult equipment manufacturers to determine appropriate disinfection steps, particularly for soft, porous surfaces such as foam earmuffs.

- Provide time for workers to implement cleaning practices during their shift. Assign cleaning assignments during working hours as part of the employee's job duties. Procure options for third-party cleaning companies to assist with the increased cleaning demand, as needed.

- Procure options for third-party cleaning companies to assist with the increased cleaning demand, as needed.

- Equip spaces such as dining rooms, bar areas, host stands, and kitchens with proper sanitation products, including hand sanitizer and sanitizing wipes to all staff directly assisting customers.

- Ensure that sanitary facilities stay operational and stocked at all times and provide additional soap, paper towels, and hand sanitizer when needed.

- When choosing disinfecting chemicals, use products approved for use against COVID-19 on the Environmental Protection Agency (EPA)-approved list and follow product instructions. Use disinfectants labeled to be effective against emerging viral pathogens, diluted household bleach solutions (5 tablespoons per gallon of water), or alcohol solutions with at least 70% alcohol that are appropriate for the surface. Provide workers training on the chemical hazards, manufacturer's directions, ventilation

requirements, and Cal/OSHA requirements for safe use. Workers using cleaners or disinfectants must wear gloves and other protective equipment as required by the product instructions. Follow the <u>asthma-safer cleaning methods</u> recommended by the California Department of Public Health and ensure proper ventilation.

- Continue to follow existing codes regarding requirements for sanitizing (rather than disinfecting) food contact surfaces.

- To minimize the risk of <u>Legionnaires' disease</u> and other diseases associated with water, <u>take steps</u> to ensure that all water systems and features are safe to use after a prolonged facility shutdown.

- Where possible, do not clean floors by sweeping or other methods that can disperse pathogens into the air unless all persons in the area have appropriate PPE. Use a vacuum with a HEPA filter wherever possible.

- Provide disposable menus to guests and make menus available digitally so that customers can view on a personal electronic device, if possible. If disposable menus cannot be provided, properly disinfect menus before and after customer use. Consider options for customers to order ahead of time.

- Discontinue pre-setting tables with napkins, cutlery, glassware, food ware, etc. These should be supplied individually to customers as needed. Do not leave card stands, flyers, napkin holders, or other items on tables.

- Suspend use of shared food items such as condiment bottles, salt and pepper shakers, etc. and provide these foods in single serve containers, if possible. Where this is not possible, shared items such as condiment bottles, shakers, etc., should be supplied as needed to customers and disinfected after each use.

- Pre-roll utensils in napkins prior to use by customers. Workers must wash hands before pre-rolling utensils in napkins. The pre-roll should then be stored in a clean container. After customers are seated, the pre-roll should be put on the table by a worker who recently washed their hands.

- Reusable customer items including utensils, food ware, breadbaskets, etc., must be properly washed, rinsed, and sanitized. Cleaned flatware, stemware, dishware, etc., must be properly stored away from customers and personnel until ready for use. Use disposable items if proper cleaning of reusable items is infeasible.

- Takeout containers for leftovers must be filled by customers and available only upon request.

- Dirty linens used at dining tables such as tablecloths and napkins should be removed after each customer use and transported from dining areas in sealed bags. Workers should wear gloves when handling dirty linens.

- Thoroughly clean each customer dining location after every use. This will include disinfecting tables, chairs, booster seats, highchairs, booths, etc. and allowing adequate time for proper disinfection, following product instructions. Many EPA-approved disinfectants require minimal contact time (seconds to one minute) against human coronavirus.

- Close areas where customers may congregate or touch food or food ware items that other guests may use. Modify delivery of these items by providing items to guests individually, converting to cafeteria-style service, etc. Discard or clean, disinfect, or sanitize shared items after each use, as appropriate. The areas that should be closed include but are not limited to:

  o Self-service areas with condiment caddies, utensil caddies, napkins, lids, straws, water pitchers, to-go containers, etc.

  o Self-service machines including ice, soda, frozen yogurt dispensers, etc.

  o Self-service food areas such as buffets, salsa bars, salad bars, etc.

- Discontinue tableside food preparation, e.g. guacamole preparation, and presentation of uncovered food items on selection carts and conveyor belts. Carts and conveyor belts can be used only if the food is fully covered in covers that are adequately cleaned and disinfected after each use or are disposable and immediately discarded after use.

- Do not leave out after-meal mints, candies, snacks, or toothpicks for customers. Offer them with the check or provide only on request.

- Install hand sanitizer dispensers, touchless if possible, at guest and worker entrances and contact areas such as driveways, reception areas, in dining rooms, near elevator landings, etc.

 ## Physical Distancing Guidelines

- **WARNING**: physical distancing alone is insufficient to prevent transmission of COVID-19.

- Prioritize outdoor seating and curbside pickup to minimize cross flow of customers in enclosed environments. Restaurants can expand their outdoor seating, and alcohol offerings in those areas, if they comply with local laws and regulations.

- Provide takeout, delivery, and drive through options for customers when possible. Takeout items should be made available using contactless pick-up and delivery protocols.

- Eliminate person-to-person contact for delivery of goods whenever possible. Designate drop-off locations to receive deliveries away from high traffic areas. Maintain physical distance of at least six feet with delivery drivers.

- Encourage reservations to allow for time to disinfect restaurant areas and provide guidance via digital platforms, if possible, to customers for physical distancing while at the restaurant.

- Consider allowing dine-in customers to order ahead of time to limit the amount of time spent in the establishment. Ask customers to wait in their cars or away from the establishment while waiting to be seated. If possible, alert patrons through their mobile phones when their table is ready to avoid touching and use of "buzzers."

- Indoor and outdoor dining service tables must be at least six feet apart, measured from the back of the chair at one table to the back of the chair at the adjacent table while diners are seated. Maximize the distance between indoor service tables beyond the required six feet wherever possible, to minimize the risks from customers eating indoors without face coverings.

- Limit the number of patrons at a single table to a household unit or patrons who have asked to be seated together. People in the same party seated at the same table do not have to be six feet apart. All members of the party must be present before seating and hosts must bring the entire party to the table at one time.

- Implement measures to ensure physical distancing of at least six feet between workers and customers. This can include use of physical partitions or visual cues (e.g., floor markings or signs to indicate to where workers and/or guests should stand).

- Install physical barriers or partitions at cash registers, bars, host stands, and other areas where maintaining physical distance of six feet is difficult.

- Any area where guests or workers queue should also be clearly marked for appropriate physical distancing. This includes check-stands and terminals, deli counters and lines, restrooms, elevator lobbies, host stands and waiting areas, valet drop off and pickup, and any other area where customers congregate.

- Physical distancing protocols should be used in any office areas, kitchens, pantries, walk-in freezers, or other high-density, high-traffic work areas, where possible.

- Worker pre-shift meetings and trainings should be conducted virtually or in areas that allow for appropriate physical distancing between workers. Food, beverages, food ware, etc., must not be shared.

- Stagger worker breaks, in compliance with wage and hour regulations, to maintain physical distancing protocols.

- Consider offering workers who request modified duties options that minimize their contact with customers and other workers (e.g., managing inventory rather than working as a cashier or managing administrative needs through telework).

- Reconfigure office spaces, lobbies, beverage bars, kitchens and workstations, host stand areas, and other spaces wherever possible to allow for at least six feet of distance between people dining, working, and passing through areas for entry and exit.

- Remove tables and chairs from dining areas so that six feet of physical distance can be maintained for customers and workers. If tables, chairs, booths, etc., cannot be moved, use visual cues to show that they are not available for use.

- Discontinue seating of customers where customers cannot maintain six feet of distance from workers, work areas, and food and drink preparation areas.

- Limit the number of workers serving individual parties, in compliance with wage and hour regulations.

- All restaurant workers should minimize the amount of time spent within six feet of guests.

- Ensure workers can maintain physical distance in breakrooms, using barriers, increasing distance between tables/chairs to separate workers, etc. Where possible, create outdoor break areas with shade coverings and seating arrangements that ensures physical distancing. Discourage workers from congregating during breaks and ensure they are not eating or drinking without face coverings within six feet of each other.

- Reconfigure kitchens to maintain physical distancing in those areas where practical and, if not practical, stagger shifts, if possible, to do work ahead of time.

- Discourage food preparation workers from changing or entering others' workstations during shifts.

- Discourage people from congregating in high traffic areas such as bathrooms, hallways, bar areas, reservation and credit card terminals, etc.

- Establish directional hallways and passageways for foot traffic, if possible, to eliminate workers from passing by one another.

- Require workers to not use handshakes, fist or elbow bumps, hugs, and similar greetings or other behaviors that break physical distance.

- Guests should enter through doors that are propped open or automated, if possible. Hand sanitizer should be available for guests who must touch door handles.

- Adjust music volume so that workers can maintain distance from customers to hear orders and people can avoid speaking loudly or shouting.

- Implement peak period queueing procedures, including a host to remind guests to queue with at least six feet of distance between parties outside or in waiting areas.

- Avoid touching others' pens and clipboards. If possible, install transfer-aiding materials, such as shelving and bulletin boards, to reduce person-to-person hand-offs.

---

[1]Additional requirements must be considered for vulnerable populations. Restaurants must comply with all Cal/OSHA standards and be prepared to adhere to its guidance as well as guidance from the Centers for Disease Control and Prevention (CDC) and the California Department of Public Health (CDPH). Additionally, employers should be prepared to alter their operations as those guidelines change.

covid19.ca.gov  

# Exhibit E



State of California—Health and Human Services Agency
# California Department of Public Health



SANDRA SHEWRY, MPH,MSW
*Acting Director*
ERICA S. PAN, MD,MPH
*Acting State Health Officer*

**GAVIN NEWSOM**
Governor

### Regional Stay At Home Order
### 12/03/2020

Upon assessment of the recent, unprecedented rise in the rate of increase in COVID-19 cases, hospitalizations, and test positivity rates across California, the California Department of Public Health (CDPH) is taking immediate actions to prevent the spread of the virus.

The State, like the nation, continues to record an unprecedented surge in the level of community spread of COVID-19. California implemented an accelerated application of the Blueprint Framework metrics on November 16 and a limited Stay at Home Order issued on November 19. However, in the interim, the number of new cases per day has increased by over 112%, (from 8,743 to 18,588) and the rate of rise of new cases per day continues to increase dramatically. The number of new hospital admissions has increased from 777 on November 15, to 1,651 on December 2, and because of the lag between case identification and hospitalizations, we can only expect these numbers to increase.

Current projections show that without additional intervention to slow the spread of COVID-19, the number of available adult Intensive Care Unit (ICU) beds in the State of California will be at capacity in mid-December.  This is a sign that the rate of rise in cases, if it continues, is at risk of overwhelming the ability of California hospitals to deliver healthcare to its residents suffering from COVID-19 and from other illnesses requiring hospital care. ICU beds are a critical resource for individuals who need the most advanced support and care and the ability to add additional ICU capacity is limited by the lack of available ICU nurses and physicians as a result of the nationwide surge in hospitalizations and ICU admissions.

Because the rate of increases in new cases continues to escalate and threatens to overwhelm the state's hospital system, further aggressive action is necessary to respond to the quickly evolving situation. While vaccines are promising future interventions, they are not available to address the immediate risks to healthcare delivery in the current surge. The immediate aggressive institution of additional non-pharmaceutical public health interventions is critical to avoid further overwhelming hospitals and to prevent the need to ration care.



**NOW, THEREFORE, I, as Acting State Public Health Officer of the State of California, order:**

1. CDPH will evaluate public health based on Regions, responsive to hospital capacity for persons resident in those Regions.

2. CDPH will evaluate the adult ICU bed capacity for each Region and identify on covid19.ca.gov any Regions for which that capacity is less than 15%. When that capacity is less than 15%, the following terms (the Terms of this Order) will apply.

   a. All gatherings with members of other households are prohibited in the Region except as expressly permitted herein.

   b. All individuals living in the Region shall stay home or at their place of residence except as necessary to conduct activities associated with the operation, maintenance, or usage of critical infrastructure,[1] as required by law, or as specifically permitted in this order.

   c. Worship and political expression are permitted outdoors, consistent with existing guidance for those activities.

   d. Critical infrastructure sectors may operate and must continue to modify operations pursuant to the applicable sector guidance.

   e. Guidance related to schools remain in effect and unchanged. Accordingly, when this Order takes effect in a Region, schools that have previously reopened for in-person instruction may remain open, and schools may continue to bring students back for in-person instruction under the Elementary School Waiver Process or Cohorting Guidance.

   f. In order to reduce congestion and the resulting increase in risk of transmission of COVID-19 in critical infrastructure retailers, all retailers may operate indoors at no more than 20% capacity and must follow the guidance for retailers. All access to retail must be strictly metered to ensure compliance with the limit on capacity. The sale of food, beverages, and alcohol for in-store consumption is prohibited.

   g. To promote and protect the physical and mental well-being of people in California, outdoor recreation facilities may continue to operate. Those facilities may not sell food or drink for on-site consumption. Overnight stays at

---

[1] See https://covid19.ca.gov/essential-workforce/ for full list of California's Critical Infrastructure workforce.

campgrounds are not permitted.

h. Nothing in this Order prevents any number of persons from the same household from leaving their residence, lodging, or temporary accommodation, as long as they do not engage in any interaction with (or otherwise gather with) any number of persons from any other household, except as specifically permitted herein.

i. Terms (a) and (b) of this section do not apply to persons experiencing homelessness.

3. Except as otherwise required by law, no hotel or lodging entity in California shall accept or honor out of state reservations for non-essential travel, unless the reservation is for at least the minimum time period required for quarantine and the persons identified in the reservation will quarantine in the hotel or lodging entity until after that time period has expired.

4. This order shall take effect on December 5, 2020 at 1259pm PST.

5. For Regions where the adult ICU bed capacity falls below 15% after the effective date of this order, the Terms of this Order shall take effect 24 hours after that assessment.

6. The Terms of this Order shall remain in place for at least three weeks from the date the order takes effect in a Region and shall continue until CDPH's four-week projections of the Region's total available adult ICU bed capacity is greater than or equal to 15%. Four-week adult ICU bed capacity projections will be made approximately twice a week, unless CDPH determines that public health conditions merit an alternate projection schedule.  If after three weeks from the effective date of the Terms of this Order in a Region, CDPH's four-week projections of the Region's total available adult ICU bed capacity is greater than or equal to 15%, the Terms of this Order shall no longer apply to the Region

7. After the termination of the Terms of this Order in a Region, each county within the Region will be assigned to a tier based on the Blueprint for a Safer Economy as set out in my August 28, 2020 Order, and the County is subject to the restrictions of the Blueprint appropriate to that tier.

8. I will continue to monitor the epidemiological data and will modify this Regional Stay-at-Home Order as required by the evolving public health conditions. If I determine that it is necessary to change the Terms of this Order, or otherwise modify the Regional Stay-at-Home Order, these modifications will be posted at covid19.ca.gov.

9. When operative in a Region, the Terms of this Order supersede any conflicting terms in other CDPH orders, directives, or guidance. Specifically, for those Regions with ICU bed capacity triggering this order, the Terms of this Order shall supersede the State's Blueprint for a Safer Economy and all guidance (other than guidance for critical infrastructure sectors) during the operative period. In all Regions that are not subject to the restrictions in this order, the Blueprint for a Safer Economy and all guidance shall remain in effect.

10. This order is issued pursuant to Health and Safety Code sections 120125, 120130(c), 120135, 120140, 120145, 120175, 120195 and 131080; EO N-60-20, N-25-20, and other authority provided for under the Emergency Services Act; and other applicable law.

Erica S. Pan, MD, MPH
Acting State Public Health Officer
California Department of Public Health

**Exhibit F**

Attachment 3



VENTURA COUNTY
PUBLIC HEALTH
A Department of Ventura County Health Care Agency

# COVID-19 CLOSURE ORDER

**The Ventura County Health Officer hereby ORDERS that:**

## Mrs. Olson's Coffee Hut

*Name of Business*

## 2800 S. Harbor Blvd, Suite A, Oxnard, CA 93035

*Address of Business Facility*

# IMMEDIATELY CEASE ALL BUSINESS ACTIVITIES AT THIS FACILITY.

The basis for this Order is that the Health Officer has determined that the continued operation of the above-described business poses a serious threat to public health and safety in light of the COVID-19 State of California and local emergency, and that the business is not an essential business in this pandemic.

This Closure Order shall remain in force until rescinded by the County Health Officer in writing or the State of California Stay at Home Order is repealed, whichever occurs first.

Notwithstanding this Order, the named business may perform minimum activities necessary to protect inventory, ensure security, process payroll and employee benefits, and to enable employees to work remotely.

Ordered By: _Robert Levin_ Dated: **12/22/2020**

*Dr. Robert Levin, Ventura County Health Officer*

Pursuant to Health and Safety Code section 120295, et seq., violation of this Order is a misdemeanor.

Inquiries may be directed to: covidcompliance@ventura.org or (805) 202-1805

**Exhibit F, Page 1 of 1**

# Exhibit G

Attachment 7



Ventura County Environmental Health Division - 800 S. Victoria Ave., Ventura CA 93009-1730
TELEPHONE: 805/654-2813 or FAX: 805/654-2480
Internet Web Site Address: *www.vcrma.org/envhealth*

# NOTICE OF TEMPORARY SUSPENSION OF PERMIT
# AND ORDER OF IMMEDIATE CLOSURE

Based upon inspection observations of _Sandy Murray_, R.E.H.S.,
on _1/11/202_ at _2:24_ AM/PM the Environmental Health Division (EHD) finds that an imminent
health hazard exists at:

Food Facility _Mrs. Olsen's Coffee Hut_
Street Address, City _2800 S. Harbor Blvd. #A, Oxnard CA 93035_
FA # _D  D  3  5  0  0  9_

Pursuant to Health and Safety Code Section 114409, the Permit to Operate the aforementioned food facility is hereby temporarily
suspended and all food preparation and/or retail sales are to immediately cease. The conditions which warranted this action and
the Health and Safety Code (HSC) Sections violated are indicated below:

**VIOLATIONS:**

_____ Sewage is overflowing within this food facility (HSC Section 114197).
_____ Toilet, water, soap, or towels for hand washing are not available for employees engaged in food preparation (HSC Sections 113953, 113953.2, 114250, and 114276).
_____ The water source to this food facility does not comply with State drinking water quality standards (HSC Section 114192).
_____ Food products are adulterated and/or necessary equipment can not be used as a result of a disaster (HSC Sections 113980, 114175, 114257, and 114182).
_____ There is a presence of vermin that are disease carrying that has or would likely result in contamination of food, utensils, equipment, or packaging (HSC Sections 114259 and 114259.1).
_____ Equipment is inoperable resulting in food temperature violations, improper food and utensil handling, or inadequate supply of water (HSC Sections 113996, 114153, 114175, 114182, and 114192.1).
_____ Unsanitary conditions or food handling practices exist that result in the contamination or adulteration of food (HSC Section 113980).
_____ There is evidence of unsanitary conditions or food handling practices that are likely to have contributed to a food-borne illness (HSC Sections 113980, 113967 and 113949).
_____ There is no method to obtain hot water for utensil, equipment and dish washing (HSC Sections 114175, 114095, 114192, and 114190).
__X__ Other: _HSC Section 114409 and 113810 (Operating a food facility with an imminent health hazard)_

At any time within 15 calendar days of the date of this Notice, you may request in writing a hearing before a hearing officer to show
cause why this permit suspension is not warranted. If requested, the hearing will be held within 15 calendar days of the receipt of
the request. Failure to request a hearing within 15 calendar days of the date of this Notice is deemed a waiver of the right to this
hearing.

Call EHD at 805/654-2813 Monday thru Friday, 8AM-5PM, when the conditions that warranted this action have been corrected.

*DO NOT BEGIN FOOD PREPARATION, RESUME RETAIL FOOD SALES, OR OPEN THE FOOD FACILITY WITHOUT
WRITTEN APPROVAL FROM THE ENVIRONMENTAL HEALTH DIVISION. FAILURE TO COMPLY WITH THIS
ORDER IS A MISDEMEANOR (HEALTH AND SAFETY CODE SECTION 114395) AND MAY RESULT IN
REVOCATION OF THE PERMIT TO OPERATE.*
Notice Received by (Person in Charge signature): _MON_

| | | | | |
|---|---|---|---|---|
| Permit suspended: | Date _1/11/2021_ | Time _2:24_ | AM/PM By (R.E.H.S.) _Sandy Murray_ |
| Permit reinstated: | Date | Time | AM/PM By (R.E.H.S.) |

ja G:\Admin\COMMSERV\Temp Susp P2O 4 24 14

**DISTRIBUTION:   WHITE**-Inspector (Initial)   **YELLOW**-Inspector (File Copy)   **PINK**-Reinstatement Notice   **GOLDENROD**-Closure Notice
(Owner/Operator)   (Owner/Operator)



Please take a moment to provide feedback. An opinion form can be completed at
http://www.vcrma.org/envhealth/hawd.html. You may also scan this code with your mobile device.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| MICHAEL G. WALKER, County Counsel, County of Ventura  SB No. 150554<br>JACLYN SMITH, Assistant County Counsel  S/B No. 274311<br>800 South Victoria Avenue, L/C 1830, Ventura, CA 93009-1830<br><br>TELEPHONE NO.: (805) 654-2773    FAX NO. *(Optional):* (805) 654-2185<br>ATTORNEY FOR *(Name):* Attorneys for Plaintiffs County of Ventura and Robert Levin, M.D.<br>in His Capacity as Health Officer for Ventura County | VENTURA<br>SUPERIOR COURT<br>**FILED**<br><br>JAN 19 2021<br><br>MICHAEL D. PLANET<br>Executive Officer and Clerk<br>BY:_____, Deputy<br><br>YVETTE MADRIGAL |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS: 800 South Victoria Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Ventura, CA 93009
BRANCH NAME: Ventura

CASE NAME: COUNTY OF VENTURA v. MRS. OLSON'S COFFEE HUT, a proprietorship; WILLIAM THOMAS BRIMIGION, JR., individually and dba MRS. OLSON'S COFFEE HUT, et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>56-2021-00549555-CU-MC-VTA |
|---|---|---|
| [X] Unlimited    [ ] Limited<br>(Amount     (Amount<br>demanded    demanded is<br>exceeds $25,000)  $25,000) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property**<br>**Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [X] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more
         issues that will be time-consuming to resolve              courts in other counties, states, or countries, or in a federal
   c. [ ] Substantial amount of documentary evidence               court
                                                              f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [ ] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):*
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date  1-19-21

JACLYN SMITH
*(TYPE OR PRINT NAME)*

PDF signature
*Jaclyn Smith*
*(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear
This Form button after you have printed the form.        [ Print this form ]   [ Save this form ]        [ Clear this form ]

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF VENTURA

800 South Victoria Avenue
Ventura , CA 93009
(805) 289-8525
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: 56-2021-00549555-CU-MC-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.
A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.

| ASSIGNED JUDICIAL OFFICER | COURT LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Mark Borrell | Ventura | 40 |

**HEARING**

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
|  |  |  |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**

**APPEARANCE AT THE ABOVE HEARING IS MANDATORY.**
**Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties. If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).**
**If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed (CCP 177.5, Local Rule 3.17).**

**Advance Jury Fee Requirement**

At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150. The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**

To set an ex parte hearing, contact the judicial secretary in the assigned department. Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**

Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670. In addition, see Local Rule 7.01 regarding notice to the teleconference provider. The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date: 01/19/2021

Clerk of the Court,
By: _yrm_
Yvette Madrigal, Clerk

VEN-FNR082

NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

# Exhibit 2

SUMMONS
*(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
SUPERIOR COURT
**FILED**

JAN 08 2021

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
THE ORIGINAL PIZZA COOKERY, JORDAN DANIEL KLEMPNER, and DOES 1-1000, inclusive

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

County of Ventura and Robert Levin, M.D., in his capacity as Health Officer for Ventura County

**MICHAEL D. PLANET**
Executive Officer and Clerk
BY: _____, Deputy
**YVETTE MADRIGAL**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Ventura County Superior Court, 800 South Victoria Avenue, Ventura, California 93009

CASE NUMBER: *(Número del Caso):*
56-2021-00549347-CU-MC-VTA

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jaclyn Smith, Assistant County Counsel, S/B 274311, 800 S. Victoria Avenue, L/C 1830, Ventura, CA 93009 (805) 654-2770

DATE:
*(Fecha)*  1/8/2021

**MICHAEL D. PLANET**

Clerk, by _____, Deputy
*(Secretario)*  **YVETTE MADRIGAL**  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED: You are served**
1. [XX] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [ ] on behalf of *(specify):*
   under: [ ] CCP 416.10 (corporation)       [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

MICHAEL G. WALKER, State Bar No. 150554
County Counsel, County of Ventura
JACLYN SMITH, State Bar No. 274511
Assistant County Counsel
CHRISTINE RENSHAW, State Bar No. 249618
Assistant County Counsel
800 South Victoria Avenue, L/C #1830
Ventura, California 93009
Telephone:    (805) 654-2580
Facsimile:    (805) 654-2185
E-mail:        jaclyn.smith@ventura.org

Attorneys for Plaintiffs County of Ventura
and Robert Levin, M.D., in His Capacity as
Health Officer for Ventura County

FILED

JAN 08 2021

MICHAEL D. PLANET
Executive Officer and Clerk

BY_____, Deputy
YVETTE MADRIGAL

(EXEMPT FROM FILING
FEES [Gov. Code, § 6103].)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

COUNTY OF VENTURA and ROBERT )
LEVIN, M.D., in his capacity as Health )
Officer for Ventura County,            )
                                       )
                Plaintiffs,            )
                                       )
        vs.                            )
                                       )
THE ORIGINAL PIZZA COOKERY;            )
JORDAN DANIEL KLEMPNER; and            )
DOES 1-1000, inclusive,                )
                                       )
                Defendants.            )
_____)

No.    56-2021-00549347-CU-MC-VTA

VERIFIED COMPLAINT FOR
TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND
PERMANENT INJUNCTION FOR
VIOLATION OF HEALTH ORDERS
AND FOR PUBLIC NUISANCE

[Deemed verified pursuant to Code Civ.
Proc., § 446]

        Plaintiffs County of Ventura and Robert Levin, M.D., in his capacity as Health

Officer for Ventura County, allege as follows:

**General Allegations**

        1. Plaintiff County of Ventura is and at all times relevant herein was a political

subdivision of the State of California (hereafter "County").

        2. Plaintiff Robert Levin, M.D., is and all time since 1998 has been the duly

appointed health officer for the County and for all cities within Ventura County (hereafter

"County Health Officer").

/ / /

1

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

1. The property that is the subject of this complaint is located at 75 West Thousand Oaks Boulevard, Thousand Oaks, Ventura County, California (hereafter "Property").

4. Defendant The Original Pizza Cookery is and at all times relevant herein operates a restaurant at the Property (hereafter "Pizza Cookery").

5. Defendant Jordan Daniel Klempner is the owner of the Pizza Cookery (hereafter "Klempner"). Plaintiffs are informed and believe, and thereon allege, that Klempner is responsible in some manner for the nuisance and violation of the health orders and directives issued by the State of California ("State") herein alleged.

6. The defendants named as Does 1 through 1,000, inclusive, are sued and designated by fictitious names pursuant to Code of Civil Procedure section 474, for the reason that their true names and capacities are unknown to plaintiffs. Plaintiffs will amend the complaint to show the true names and capacities of such defendants fictitiously named when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of the Doe defendants is responsible in some manner for the nuisance and violation of the health orders and directives issued by the State herein alleged.

7. Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned herein, each of the defendants were and now are the agents, officers, employees, members, representatives, or alter egos of one or more of the remaining defendants, and, in doing the things hereinafter alleged, were acting within the scope of their authority as such agents, officers, employees, members, representatives or alter egos with the permission and consent of the remaining defendants.

8. On March 4, 2020, the Governor of the State of California (hereafter "Governor") declared a state of emergency in California due to the threat of the 2019 novel coronavirus (hereafter "COVID-19"). The declaration of state of emergency remains in effect. On March 12, 2020, the Governor issued Executive Order N-25-20 ordering all state residents to heed any orders and guidance of state and local public

///

2

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

1  health officials with respect to COVID-19. A true and correct copy of Executive Order

2  N-25-20 is attached hereto as Exhibit A and incorporated herein by reference.

3        9.  On March 12, 2020, the County Health Officer declared a local health

4  emergency pursuant to Health and Safety Code section 101080 due to the COVID-19

5  pandemic. On March 17, 2020, the County Board of Supervisors adopted a resolution

6  proclaiming that a local emergency and a local health emergency exist in Ventura County

7  due to the COVID-19 pandemic and ratifying the declaration of local health emergency

8  by the County Health Officer. The proclamation of local emergency and declaration of

9  local health emergency remain in effect.

10       10.  The Governor's Proclamation of a State Emergency issued on March 4, 2020,

11  waived the 30-day time period in Health and Safety Code section 101080, within which a

12  local governing authority must renew a local health emergency for the duration of the

13  statewide emergency.

14       11.  On March 19, 2020, the Governor issued Executive Order N-33-20 ordering

15  all residents to immediately heed the current state public health directives. A true and

16  correct copy of Executive Order N-33-20 is attached hereto as Exhibit B and incorporated

17  herein by reference. Within that executive order, the State Public Health Officer and the

18  Director of the California Department of Public Health (hereafter "CDPH"), ordered,

19  among other things, that all individuals stay home except as essential needs required.

20       12.  Since the initial COVID-19 declaration was made in March 2020, the State –

21  through executive orders of the Governor as well as orders and guidance documents

22  promulgated by the State Public Health Officer – has issued evolving regulations

23  governing industry, businesses and activities conducted within the State during the

24  COVID-19 pandemic, tailored to meet the current demands of the health emergency.

25       13.  On August 28, 2020, the State implemented the currently operative "Blueprint

26  for a Safer Economy" which sets forth a tiered system based upon how prevalent COVID-

27  19 is in each county and the extent of community spread. ("Governor Newsom Unveils

28  ///

3

1   Blueprint for a Safer Economy, a Statewide, Stringent and Slow Plan for Living with

2   COVID-19" (August 28, 2020)

3   <https://www.gov.ca.gov/2020/08/28/governor-newsom-unveils-blueprint-for-a-safer-eco

4   nomy-a-statewide-stringent-and-slow-plan-for-living-with-covid-19/> [as of January 8,

5   2021].) A true and correct copy of the California Department of Health's Blueprint for a

6   Safer Economy Activity and Business Tiers is attached hereto as Exhibit C and

7   incorporated herein by reference. The Blueprint for a Safer Economy restricts when

8   sectors and activities may operate indoors and limits how many people may participate

9   based on transmission risk. The tiered system consists of four categories: purple

10  (widespread), red (substantial), orange (moderate) and yellow (minimal). The Blueprint

11  for a Safer Economy remains in effect as of the date this complaint is signed.

12          14. Under the Blueprint for a Safer Economy, in counties classified in the purple

13  tier, restaurants are permitted to operate outdoors only with modifications. Wineries and

14  tasting rooms are also permitted to operate outdoors only with modifications. Bars,

15  breweries and distilleries must remain closed. (Exhibit C, at p. 4; see also, Industry

16  Guidance for Gyms and Fitness Centers (December 3, 2020)

17  <https://covid19.ca.gov/industry-guidance/#fitness-guidance> [as of January 8, 2021].)

18          15. The State, through the CDPH, has also issued COVID-19 Industry Guidance

19  for Restaurants. A true and correct copy of the State's COVID-19 Industry Guidance for

20  Restaurants is attached hereto as Exhibit D and incorporated herein by reference. The

21  guidance restates the requirement that in counties classified in the purple tier, restaurants

22  are only permitted to operate outdoors and must continue to follow the modifications set

23  forth in the guidance document. The guidance requires that members of the public and

24  staff use face coverings and requires certain hygiene measures are implemented. The

25  guidance further requires that restaurants "prioritize outdoor seating and curbside pickup

26  to minimize cross flow of customers in enclosed environments" and "implement measures

27  to ensure physical distancing of at least six feet between workers and customers."

28  ///

4

1   (Exhibit D, pp. 12-13.)  The guidance states that restaurants "should continue to

2   encourage takeout and delivery service whenever possible." (Exhibit D, at pp. 3.)

3        16.  The County has been classified in the most restrictive tier, the purple tier,

4   since November 16, 2020, due to the high rate of COVID-19 transmission in the County.

5   Businesses, such as restaurants, that were impacted by the move to the purple tier were to

6   make their operational modifications by midnight November 17, 2020.

7        17.  COVID-19 spreads by way of person-to-person contact.  The virus spreads

8   easily and sustainably, as demonstrated by the continuous rise in the number of persons

9   infected by the disease both locally and nationally.  COVID-19 continues to present an

10  imminent and proximate threat to the residents of Ventura County.  It is essential to

11  control the spread of COVID-19 as much as possible and prevent the health care system

12  from being overwhelmed.

13       18. California is presently experiencing a massive surge in COVID-19 infections,

14  hospitalizations and deaths.

15       19. In light of the current "unprecedented rise in the rate of increase in COVID-19

16  cases, hospitalizations, and test positivity rates across California," the State Public Health

17  Officer issued a Regional Stay-At-Home Order ("Regional Order") on December 3, 2020.

18  A true and correct copy of the Regional Order is attached hereto as Exhibit E and

19  incorporated herein by reference.  According to the State Public Health Officer,

20  "[b]ecause the rate of increases in new cases continues to escalate and threatens to

21  overwhelm the [S]tate's hospital system, further aggressive action is necessary to respond

22  to the quickly evolving situation." (Exhibit E, at p. 1.)  The Regional Order applies in

23  regions of the State with less than 15 percent ICU bed capacity.  (Exhibit E, § 2.)

24  Pursuant to the Regional Order, "[a]ll gatherings with members of other households are

25  prohibited . . . except as expressly permitted [in the order]." (Exhibit E, § 2(a).)  The

26  Regional Order further requires that "[a]ll individuals living in the Region shall stay

27  home or at their place of residence except as necessary to conduct activities associated

28  ///

5

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

1  with the operation, maintenance, or usage of critical infrastructure, as required by law, or

2  as specifically permitted by this order." (Exhibit E, § 2(b).)

3      20.  Under the Regional Order, restaurants can stay open for takeout and delivery

4  only.  As such, under the Regional Order, neither outdoor nor indoor dining is permitted.

5  "Food and Agriculture" is classified as part of California's Essential Critical

6  Infrastructure Workforce.  (See Exhibit E, § 2(b), footnote 1 and "Essential Workforce"

7  (December 3, 2020) <https://covid19.ca.gov/essential-workforce/> [as of January 8,

8  2020].)  Pursuant to the Essential Critical Infrastructure Workforce and the Regional

9  Order, "[w]orkers supporting restaurant carry-out and quick serve food operations,

10  including food preparation, carry-out and delivery food employees" are permitted to

11  continue working while the Regional Order is in effect.  (Ibid.)

12      21.  The Regional Order "shall remain in place for at least three weeks from the

13  date the order takes effect in a Region and shall continue until CDPH's four-week

14  projections of the Region's total available adult ICU bed capacity is greater than or equal

15  to 15%." (Exhibit E, §§ 4 & 6.)  After the termination of the Regional Order, "each

16  county within the Region will be assigned to a tier based on the Blueprint for a Safer

17  Economy" and the county is subject to the restrictions of the Blueprint appropriate to that

18  tier. (Exhibit E, § 7.)

19      22.  The County is located within the Southern California Region, which fell under

20  the purview of the Regional Order as of December 6, 2020.  As of the date of the signing

21  of this complaint, the ICU capacity in the Southern California Region remains at

22  0 percent and the Regional Order remains in effect.  Hereinafter, the Blueprint for a Safer

23  Economy and the Regional Order shall be referred to as the "Health Orders."

24      23.  Pursuant to Government Code section 8634, during a local emergency, the

25  County Health Officer may promulgate orders as necessary to provide for the protection

26  of life and property.

27      24.  Pursuant to Health and Safety Code section 101040, subdivision (a), the

28  County Health Officer "may take any preventive measure that may be necessary to protect

6

1    and preserve the public health from any public health hazard during any 'state of war

2    emergency,' 'state of emergency,' or 'local emergency,' as defined by Section 8558 of the

3    Government Code, within his or her jurisdiction." Furthermore, pursuant to Health and

4    Safety Code section 120175, the County Health Officer, "knowing or having reason to

5    believe that any case of the diseases made reportable by regulation of [CDPH], or any

6    other contagious, infectious or communicable disease exists, or has recently existed,

7    within the territory under his or her jurisdiction, shall take measures as may be necessary

8    to prevent the spread of the disease or occurrence of additional cases."

9         25. In the face of all of the foregoing, from and after November 17, 2020, Pizza

10   Cookery, Klempner, and Does 1-1,000 have operated a restaurant on the Property in

11   violation of the Health Orders by hosting, facilitating, encouraging and participating in

12   indoor dining at the Pizza Cookery and on the Property.  Furthermore, Pizza Cookery and

13   Klempner have refused to enforce or encourage social distancing among patrons of the

14   restaurant and/or staff and refuse to require face coverings.  The Pizza Cookery,

15   Klempner and Does 1-1,000 have permitted, allowed and encouraged these violations of

16   the Health Orders.

17        26. After receiving complaints about indoor dining continuing at the Property, on

18   November 20, 2020, the Ventura County Environmental Health Division (EHD)

19   conducted a complaint inspection at the Property.  During the inspection, persons were

20   dining inside at the bar, at tables and in booths.  Customers dining inside were not

21   wearing face masks.  Investigators spoke with Klempner regarding the violations of the

22   Health Orders that prohibit indoor dining at restaurants.  Klempner refused to cease

23   indoor dining and stated he would continue to allow indoor dining at the Property absent a

24   court order.

25        27. On or around November 20, 2020, the County Health Officer issued a Closure

26   Order ("Closure Order") to Pizza Cookery.  A true and correct copy of the County Health

27   Officer's Closure Order is attached hereto as Exhibit F and incorporated herein by

28   reference. EHD also issued a Notice of Temporary Suspension of Permit and Order of

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

1   Immediate Closure ("Suspension of Permit") to Pizza Cookery. A true and correct copy

2   of the Notice of Temporary Suspension of Permit and Order of Immediate Closure is

3   attached hereto as Exhibit G and incorporated herein by reference.  Both the Closure

4   Order and Suspension of Permit were served on Klempner on or around November 20,

5   2020.  Under these orders, Pizza Cookery, Klempner and Does 1-1,000 are ordered to

6   cease all food operations at the Property.

7          28.  Following receipt of such Closure Order and Suspension of Permit, the Pizza

8   Cookery, Klempner and Does 1-1,000 continued to operate the restaurant and have

9   repeatedly allowed indoor dining at the Property.

10          29.  Klempner, Pizza Cookery and Does 1-1,000 were ordered to cease all indoor

11   dining and Klempner, Pizza Cookery and Does 1-1,000 once again refused.

12                        **FIRST CAUSE OF ACTION**

13                      **VIOLATION OF HEALTH ORDERS**

14                          **(Against All Defendants)**

15          30.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 29 of

16   this complaint.

17          31.  The wrongful conduct of defendants, and each of them, as alleged herein,

18   unless and until enjoined and restrained by the court, will cause and continue to cause

19   great and irreparable injury to the general public, including all persons within Ventura

20   County, by creating a significant risk of further community spread of COVID-19,

21   including hospitalizations and deaths, which in turn is likely to result in continued and

22   further restrictions on businesses and other operations and activities within Ventura

23   County, detrimentally affecting the quality of life of the entire community.

24          32.  Plaintiffs have no adequate remedy at law because the amount of the damages

25   to the general public's health, safety and welfare is unascertainable and damages cannot

26   compensate for the societal disruption, illnesses and deaths caused by the callous

27   disregard of health orders during a global pandemic.

28   / / /

                                    8

SECOND CAUSE OF ACTION

PUBLIC NUISANCE

(Against All Defendants)

33. Plaintiffs reallege and incorporate by reference paragraphs 1 through 31 of this complaint.

34. The wrongful conduct of defendants, and each of them, as alleged herein, constitutes a public nuisance per se.

**PRAYER**

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as to all causes of action as follows:

A. For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining and prohibiting defendants, and each of them, and their agents, employees, representatives, members, and volunteers, and all persons acting under, in concert with or for them, from violating the Closure Order, the Blueprint for a Safer Economy and/or Regional Order as they pertain to the operation of restaurants.

B. For costs of suit; and

C. For such other and further relief as the court deems just and proper.

MICHAEL G. WALKER
County Counsel, County of Ventura

Dated:  January 8, 2021

By _____
JACLYN SMITH
Assistant County Counsel

CHRISTINE RENSHAW
Assistant County Counsel

Attorneys for Plaintiffs County of Ventura
and Robert Levin, M.D., in His Capacity as
Health Officer for Ventura County

9

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

Claudia's international education and deep knowledge of the community she loves make her uniquely qualified to serve as your representative.  Claudia has embraced Thousand Oaks and is viewed as one of its staunchest defenders.

Claudia has a B.A. in Journalism from UT El Paso and earned her Master's Degree in Public Policy & Administration from California Lutheran University (CLU) in 2007. Claudia is also a 1992 Arthur F. Burns Fellow from the International Center for Journalists.

**Leadership Positions:**

Mayor, City of Thousand Oaks, 2005, 2013, 2017
Mayor Pro Tem, 2004, 2012, 2016
Councilmember, City of Thousand Oaks, elected November 2002
Chair, Thousand Oaks Planning Commission, February – November 2002
Commissioner, Thousand Oaks Planning Commission, January 2001 – November 2002

**City Council Assignments: Past and Present**

Local Agency Formation Commission
California Clear Power Alliance of Southern California
Ad Hoc Homeless Committee
Ad Hoc City Council Cultural Arts Review Committee
Ad Hoc City Council Fire Services Review Committee
Ad Hoc Newbury Park Noise Mitigation Committee
Association of Water Agencies of Ventura County
Capital Facilities Committee
Conejo Coalition for Youth and Families Committee
Conejo Open Space Conservation Agency (COSCA)
Intergovernmental Relations Committee (School District/Park District/City)
League of California Cities Environmental Quality Policy Committee, 2003
National League of Cities Energy, Environment, and Natural Resources Committee, 2003
Thousand Oaks Redevelopment Successor Agency Oversight Board
TOPASS (Thousand Oaks Plan to Assist School Sites) Foundation Board
Ventura Council of Governments
Ventura County Transportation Commission
Ventura Intercity Service Transit Authority (VISTA) Liaison
Ventura Regional Sanitation District

**Community Involvement:**





Co-Chair, American Heart Association's *Go Red for Women* Ventura County, 2015

(Member of/who served/Greater Conejo Valley Chamber of) Commerce, 2014

San Fernando Business Journal's "40 Under 40" Award Winner (honoring professionals in the region), 2004

American Association of University Women

California Lutheran University Alumni Association

Santa Monica Mountains Conservancy Advisory Committee (2003 – 2008)

Save the Conejo 2000 (2000 – 2001)

SOAR Member

Conejo Compassion Coalition, a Saint Patrick's Episcopal Church Outreach Ministry

Save Open Space

Writers Guild of America (WGA)

Angels of the Alliance (TOArts)

▲

## CAMPAIGN

| | |
|---|---|
| Home | News |
| Claudia's Story | Events |
| Issues | Ask for a Yard Sign! |
| Helpful Videos | Contact |
| Endorsements | |

SUPERIOR COURT OF CALIFORNIA
COUNTY OF VENTURA

800 South Victoria Avenue
Ventura , CA 93009
(805) 289-8525
WWW.VENTURA.COURTS.CA.GOV

## NOTICE OF CASE ASSIGNMENT AND MANDATORY APPEARANCE

Case Number: 56-2021-00549347-CU-MC-VTA

Your case has been assigned for all purposes to the judicial officer indicated below.

**A copy of this Notice of Case Assignment and Mandatory Appearance shall be served by the filing party on all named Defendants/Respondents with the Complaint or Petition, and with any Cross-Complaint or Complaint in Intervention that names a new party to the underlying action.**

| ASSIGNED JUDICIAL OFFICER | COURT  LOCATION | DEPT/ROOM |
|---|---|---|
| Hon. Henry Walsh | Ventura | 42 |

**HEARING**

| EVENT DATE | EVENT TIME | EVENT DEPT/ROOM |
|---|---|---|
| | | |

## SCHEDULING INFORMATION

**Judicial Scheduling Information**

**APPEARANCE AT THE ABOVE HEARING IS MANDATORY.**
**Each party must file a Case Management Statement no later than 15 calendar days prior to the hearing and serve it on all parties.  If your Case Management Statement is untimely, it may NOT be considered by the court (CRC 3.725).**
**If proof of service and/or request for entry of default have not been filed: At the above hearing you are ordered to show cause why you should not be compelled to pay sanctions and/or why your case should not be dismissed  (CCP 177.5, Local Rule 3.17).**

**Advance Jury Fee Requirement**

At least one party demanding a jury trial on each side of a civil case must pay a non-refundable jury fee of $150.
The non-refundable jury fee must be paid timely pursuant to Code of Civil Procedure section 631.

**Noticed Motions/Ex Parte Matters**

To set an ex parte hearing, contact the judicial secretary in the assigned department.  Contact the clerk's office to reserve a date for a law and motion matter.

**Telephonic Appearance**

Telephonic appearance at the Case Management Conference is permitted pursuant to CRC 3.670.  In addition, see Local Rule 7.01 regarding notice to the teleconference provider.  The court, through the teleconference provider, will contact all parties and counsel prior to the hearing.

Date:  01/08/2021

Clerk of the Court,

By: _____

Yvette  Madrigal, Clerk

VEN-FNR082

MICHAEL G. WALKER (County Counsel, County of Ventura, SBN 150854)
JACLYN N. SMITH, Assistant County Counsel, SBN 247740
800 South Victoria Avenue, L/C #1830, Ventura, CA 93009

TELEPHONE NO.: 805-654-2270          FAX NO. (Optional): 805-654-2185
ATTORNEY FOR (Name): Attorneys for Plaintiffs County of Ventura through the Office
                     of the Ventura County Director of Airports

SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA
STREET ADDRESS:  800 South Victoria Avenue
MAILING ADDRESS:
CITY AND ZIP CODE:  Ventura, CA 93009
BRANCH NAME:  Ventura

SUPERIOR COURT
FILED

JAN 08 2021

MICHAEL D. PLANET
Executive Officer and Clerk
BY: _____, Deputy
YVETTE MADRIGAL

| CASE NAME: COUNTY OF VENTURA, et al. v. THE ORIGINAL PIZZA COCKERY, et al. |
|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000) | [ ] Counter  [ ] Joinder | 56-2021-00549347-CU-MC-VTA |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: |

*Items 1–6 below must be completed (see instructions on page 2)*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [X] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [ ] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*:
5. This case [ ] is  [X] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 1-8-2021

JACLYN SMITH                                      ▶ *Jaclyn Smith*   PDF signature
_____                  _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

MICHAEL G. WALKER, State Bar No. 157554
County Counsel, County of Ventura
JACLYN SMITH, State Bar No. 274511
Assistant County Counsel
CHRISTINE RENSHAW, State Bar No. 249618
Assistant County Counsel
800 South Victoria Avenue, L/C #1830
Ventura, California 93009
Telephone:   (805) 654-2580
Facsimile:   (805) 654-2185
E-mail:    jaclyn.smith@ventura.org

Attorneys for Plaintiffs County of Ventura
and Robert Levin, M.D., in His Capacity as
Health Officer for Ventura County

FILED
JAN 08 2021
MICHAEL D. PLANET
Executive Officer and Clerk
BY_____, Deputy
YVETTE MADRIGAL

(EXEMPT FROM FILING
FEES [Gov. Code, § 6103].)

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF VENTURA

COUNTY OF VENTURA and ROBERT
LEVIN, M.D., in his capacity as Health
Officer for Ventura County,

Plaintiffs,

vs.

THE ORIGINAL PIZZA COOKERY;
JORDAN DANIEL KLEMPNER; and
DOES 1-1000, inclusive,

Defendants.

No.   56-2021-00549347-CU-MC-VTA

VERIFIED COMPLAINT FOR
TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND
PERMANENT INJUNCTION FOR
VIOLATION OF HEALTH ORDERS
AND FOR PUBLIC NUISANCE

[Deemed verified pursuant to Code Civ.
Proc., § 446]

Plaintiffs County of Ventura and Robert Levin, M.D., in his capacity as Health

Officer for Ventura County, allege as follows:

### General Allegations

1. Plaintiff County of Ventura is and at all times relevant herein was a political

subdivision of the State of California (hereafter "County").

2. Plaintiff Robert Levin, M.D., is and all time since 1998 has been the duly

appointed health officer for the County and for all cities within Ventura County (hereafter

"County Health Officer").

///

1

1. The property that is the subject of this complaint is located at 75 West

Thousand Oaks Boulevard, Thousand Oaks, Ventura County, California (hereafter

"Property").

4.  Defendant The Original Pizza Cookery is and at all times relevant herein

operates a restaurant at the Property (hereafter "Pizza Cookery").

5.  Defendant Jordan Daniel Klempner is the owner of the Pizza Cookery

(hereafter "Klempner").  Plaintiffs are informed and believe, and thereon allege, that

Klempner is responsible in some manner for the nuisance and violation of the health

orders and directives issued by the State of California ("State") herein alleged.

6.  The defendants named as Does 1 through 1,000, inclusive, are sued and

designated by fictitious names pursuant to Code of Civil Procedure section 474, for the

reason that their true names and capacities are unknown to plaintiffs.  Plaintiffs will

amend the complaint to show the true names and capacities of such defendants fictitiously

named when ascertained.  Plaintiffs are informed and believe, and thereon allege, that

each of the Doe defendants is responsible in some manner for the nuisance and violation

of the health orders and directives issued by the State herein alleged.

7.  Plaintiffs are informed and believe, and on that basis allege, that at all times

mentioned herein, each of the defendants were and now are the agents, officers,

employees, members, representatives, or alter egos of one or more of the remaining

defendants, and, in doing the things hereinafter alleged, were acting within the scope of

their authority as such agents, officers, employees, members, representatives or alter egos

with the permission and consent of the remaining defendants.

8.  On March 4, 2020, the Governor of the State of California (hereafter

"Governor") declared a state of emergency in California due to the threat of the 2019

novel coronavirus (hereafter "COVID-19").  The declaration of state of emergency

remains in effect.  On March 12, 2020, the Governor issued Executive Order N-25-20

ordering all state residents to heed any orders and guidance of state and local public

/ / /

2

1  health officials with respect to COVID-19.  A true and correct copy of Executive Order

2  N-25-20 is attached hereto as Exhibit A and incorporated herein by reference.

3       9.  On March 12, 2020, the County Health Officer declared a local health

4  emergency pursuant to Health and Safety Code section 101080 due to the COVID-19

5  pandemic.  On March 17, 2020, the County Board of Supervisors adopted a resolution

6  proclaiming that a local emergency and a local health emergency exist in Ventura County

7  due to the COVID-19 pandemic and ratifying the declaration of local health emergency

8  by the County Health Officer.  The proclamation of local emergency and declaration of

9  local health emergency remain in effect.

10       10.  The Governor's Proclamation of a State Emergency issued on March 4, 2020,

11  waived the 30-day time period in Health and Safety Code section 101080, within which a

12  local governing authority must renew a local health emergency for the duration of the

13  statewide emergency.

14       11.  On March 19, 2020, the Governor issued Executive Order N-33-20 ordering

15  all residents to immediately heed the current state public health directives.  A true and

16  correct copy of Executive Order N-33-20 is attached hereto as Exhibit B and incorporated

17  herein by reference.  Within that executive order, the State Public Health Officer and the

18  Director of the California Department of Public Health (hereafter "CDPH"), ordered,

19  among other things, that all individuals stay home except as essential needs required.

20       12.  Since the initial COVID-19 declaration was made in March 2020, the State –

21  through executive orders of the Governor as well as orders and guidance documents

22  promulgated by the State Public Health Officer – has issued evolving regulations

23  governing industry, businesses and activities conducted within the State during the

24  COVID-19 pandemic, tailored to meet the current demands of the health emergency.

25       13.  On August 28, 2020, the State implemented the currently operative "Blueprint

26  for a Safer Economy" which sets forth a tiered system based upon how prevalent COVID-

27  19 is in each county and the extent of community spread.  ("Governor Newsom Unveils

28  ///

3

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

1  Blueprint for a Safer Economy, a Statewide, Stringent and Slow Plan for Living with

2  COVID-19" (August 28, 2020)

3  <https://www.gov.ca.gov/2020/08/28/governor-newsom-unveils-blueprint-for-a-safer-eco

4  nomy-a-statewide-stringent-and-slow-plan-for-living-with-covid-19/> [as of January 8,

5  2021].)  A true and correct copy of the California Department of Health's Blueprint for a

6  Safer Economy Activity and Business Tiers is attached hereto as Exhibit C and

7  incorporated herein by reference.  The Blueprint for a Safer Economy restricts when

8  sectors and activities may operate indoors and limits how many people may participate

9  based on transmission risk.  The tiered system consists of four categories:  purple

10  (widespread), red (substantial), orange (moderate) and yellow (minimal).  The Blueprint

11  for a Safer Economy remains in effect as of the date this complaint is signed.

12       14.  Under the Blueprint for a Safer Economy, in counties classified in the purple

13  tier, restaurants are permitted to operate outdoors only with modifications.  Wineries and

14  tasting rooms are also permitted to operate outdoors only with modifications.  Bars,

15  breweries and distilleries must remain closed.  (Exhibit C, at p. 4; see also, Industry

16  Guidance for Gyms and Fitness Centers (December 3, 2020)

17  <https://covid19.ca.gov/industry-guidance/#fitness-guidance> [as of January 8, 2021].)

18       15.  The State, through the CDPH, has also issued COVID-19 Industry Guidance

19  for Restaurants.  A true and correct copy of the State's COVID-19 Industry Guidance for

20  Restaurants is attached hereto as Exhibit D and incorporated herein by reference.  The

21  guidance restates the requirement that in counties classified in the purple tier, restaurants

22  are only permitted to operate outdoors and must continue to follow the modifications set

23  forth in the guidance document.  The guidance requires that members of the public and

24  staff use face coverings and requires certain hygiene measures are implemented.  The

25  guidance further requires that restaurants "prioritize outdoor seating and curbside pickup

26  to minimize cross flow of customers in enclosed environments" and "implement measures

27  to ensure physical distancing of at least six feet between workers and customers."

28  / / /

4

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

(Exhibit D, pp. 12-13.   The guidance states that restaurants "should continue to

encourage takeout and delivery service whenever possible."  (Exhibit D, at pp. 3.)

16.  The County has been classified in the most restrictive tier, the purple tier, since November 16, 2020, due to the high rate of COVID-19 transmission in the County. Businesses, such as restaurants, that were impacted by the move to the purple tier were to make their operational modifications by midnight November 17, 2020.

17.  COVID-19 spreads by way of person-to-person contact.  The virus spreads easily and sustainably, as demonstrated by the continuous rise in the number of persons infected by the disease both locally and nationally.  COVID-19 continues to present an imminent and proximate threat to the residents of Ventura County.  It is essential to control the spread of COVID-19 as much as possible and prevent the health care system from being overwhelmed.

18. California is presently experiencing a massive surge in COVID-19 infections, hospitalizations and deaths.

19. In light of the current "unprecedented rise in the rate of increase in COVID-19 cases, hospitalizations, and test positivity rates across California," the State Public Health Officer issued a Regional Stay-At-Home Order ("Regional Order") on December 3, 2020. A true and correct copy of the Regional Order is attached hereto as Exhibit E and incorporated herein by reference.  According to the State Public Health Officer, "[b]ecause the rate of increases in new cases continues to escalate and threatens to overwhelm the [S]tate's hospital system, further aggressive action is necessary to respond to the quickly evolving situation." (Exhibit E, at p. 1.)  The Regional Order applies in regions of the State with less than 15 percent ICU bed capacity.  (Exhibit E, § 2.) Pursuant to the Regional Order, "[a]ll gatherings with members of other households are prohibited . . . except as expressly permitted [in the order]." (Exhibit E, § 2(a).)  The Regional Order further requires that "[a]ll individuals living in the Region shall stay home or at their place of residence except as necessary to conduct activities associated

///

5

1   with the operation, maintenance, or usage of critical infrastructure, as required by law, or

2   as specifically permitted by this order."  (Exhibit E, § 2.b.i.)

3       20.  Under the Regional Order, restaurants can stay open for takeout and delivery

4   only.  As such, under the Regional Order, neither outdoor nor indoor dining is permitted.

5   "Food and Agriculture" is classified as part of California's Essential Critical

6   Infrastructure Workforce.  (See Exhibit E, § 2(b), footnote 1 and "Essential Workforce"

7   (December 3, 2020) <https://covid19.ca.gov/essential-workforce/> [as of January 8,

8   2020].)  Pursuant to the Essential Critical Infrastructure Workforce and the Regional

9   Order, "[w]orkers supporting restaurant carry-out and quick serve food operations,

10  including food preparation, carry-out and delivery food employees" are permitted to

11  continue working while the Regional Order is in effect.  (Ibid.)

12      21.  The Regional Order "shall remain in place for at least three weeks from the

13  date the order takes effect in a Region and shall continue until CDPH's four-week

14  projections of the Region's total available adult ICU bed capacity is greater than or equal

15  to 15%."  (Exhibit E, §§ 4 & 6.)  After the termination of the Regional Order, "each

16  county within the Region will be assigned to a tier based on the Blueprint for a Safer

17  Economy" and the county is subject to the restrictions of the Blueprint appropriate to that

18  tier.  (Exhibit E, § 7.)

19      22.  The County is located within the Southern California Region, which fell under

20  the purview of the Regional Order as of December 6, 2020.  As of the date of the signing

21  of this complaint, the ICU capacity in the Southern California Region remains at

22  0 percent and the Regional Order remains in effect.  Hereinafter, the Blueprint for a Safer

23  Economy and the Regional Order shall be referred to as the "Health Orders."

24      23.  Pursuant to Government Code section 8634, during a local emergency, the

25  County Health Officer may promulgate orders as necessary to provide for the protection

26  of life and property.

27      24.  Pursuant to Health and Safety Code section 101040, subdivision (a), the

28  County Health Officer "may take any preventive measure that may be necessary to protect

6

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

and preserve the public health in any public health hazard during any "state of war emergency," "state of emergency" or "local emergency" as defined by Section 8558 of the Government Code, within his or her jurisdiction." Furthermore, pursuant to Health and Safety Code section 120175, the County Health Officer, "knowing or having reason to believe that any case of the diseases made reportable by regulation of [CDPH], or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, shall take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases."

25. In the face of all of the foregoing, from and after November 17, 2020, Pizza Cookery, Klempner, and Does 1-1,000 have operated a restaurant on the Property in violation of the Health Orders by hosting, facilitating, encouraging and participating in indoor dining at the Pizza Cookery and on the Property. Furthermore, Pizza Cookery and Klempner have refused to enforce or encourage social distancing among patrons of the restaurant and/or staff and refuse to require face coverings. The Pizza Cookery, Klempner and Does 1-1,000 have permitted, allowed and encouraged these violations of the Health Orders.

26. After receiving complaints about indoor dining continuing at the Property, on November 20, 2020, the Ventura County Environmental Health Division (EHD) conducted a complaint inspection at the Property. During the inspection, persons were dining inside at the bar, at tables and in booths. Customers dining inside were not wearing face masks. Investigators spoke with Klempner regarding the violations of the Health Orders that prohibit indoor dining at restaurants. Klempner refused to cease indoor dining and stated he would continue to allow indoor dining at the Property absent a court order.

27. On or around November 20, 2020, the County Health Officer issued a Closure Order ("Closure Order") to Pizza Cookery. A true and correct copy of the County Health Officer's Closure Order is attached hereto as Exhibit F and incorporated herein by reference. EHD also issued a Notice of Temporary Suspension of Permit and Order of

7

1   Immediate Closure ("Suspension of Permit") to Pizza Cookery. A true and correct copy
2   of the Notice of Temporary Suspension of Permit and Order of Immediate Closure is
3   attached hereto as Exhibit G and incorporated herein by reference.  Both the Closure
4   Order and Suspension of Permit were served on Klempner on or around November 20,
5   2020.  Under these orders, Pizza Cookery, Klempner and Does 1-1,000 are ordered to
6   cease all food operations at the Property.

7       28.  Following receipt of such Closure Order and Suspension of Permit, the Pizza
8   Cookery, Klempner and Does 1-1,000 continued to operate the restaurant and have
9   repeatedly allowed indoor dining at the Property.

10       29.  Klempner, Pizza Cookery and Does 1-1,000 were ordered to cease all indoor
11   dining and Klempner, Pizza Cookery and Does 1-1,000 once again refused.

12                          **FIRST CAUSE OF ACTION**
13                        **VIOLATION OF HEALTH ORDERS**
14                           **(Against All Defendants)**

15       30.  Plaintiffs reallege and incorporate by reference paragraphs 1 through 29 of
16   this complaint.

17       31.  The wrongful conduct of defendants, and each of them, as alleged herein,
18   unless and until enjoined and restrained by the court, will cause and continue to cause
19   great and irreparable injury to the general public, including all persons within Ventura
20   County, by creating a significant risk of further community spread of COVID-19,
21   including hospitalizations and deaths, which in turn is likely to result in continued and
22   further restrictions on businesses and other operations and activities within Ventura
23   County, detrimentally affecting the quality of life of the entire community.

24       32.  Plaintiffs have no adequate remedy at law because the amount of the damages
25   to the general public's health, safety and welfare is unascertainable and damages cannot
26   compensate for the societal disruption, illnesses and deaths caused by the callous
27   disregard of health orders during a global pandemic.

28   ///

                                    8

                VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,

SECOND CAUSE OF ACTION

PUBLIC NUISANCE

(Against All Defendants)

33. Plaintiffs reallege and incorporate by reference paragraphs 1 through 31 of this complaint.

34. The wrongful conduct of defendants, and each of them, as alleged herein, constitutes a public nuisance per se.

**PRAYER**

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as to all causes of action as follows:

A. For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining and prohibiting defendants, and each of them, and their agents, employees, representatives, members, and volunteers, and all persons acting under, in concert with or for them, from violating the Closure Order, the Blueprint for a Safer Economy and/or Regional Order as they pertain to the operation of restaurants.

B. For costs of suit; and

C. For such other and further relief as the court deems just and proper.

MICHAEL G. WALKER
County Counsel, County of Ventura

Dated: January 8, 2021       By

JACLYN SMITH
Assistant County Counsel

CHRISTINE RENSHAW
Assistant County Counsel

Attorneys for Plaintiffs County of Ventura
and Robert Levin, M.D., in His Capacity as
Health Officer for Ventura County

9

VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,